PEOPLE v VAUGHN

Docket No. 115457. Submitted October 2, 1990, at Lansing. Decided
    December 5, 1990, at 9:05 A.M. Leave to appeal sought.
    Kevin E. Vaughn was convicted of one count of first-degree
        criminal sexual conduct as an aider and abettor and one count
        of third-degree criminal sexual conduct following a bench trial
        in the Genesee Circuit Court, Thomas L. Gadola, J. The defen-
        dant appealed, contending that the evidence was insufficient to
        support his conviction of third-degree criminal sexual conduct
        because a serologist was unable to positively identify him, that
        no principal was identified whom he could be said to have aided
        and abetted, that the findings of fact by the trial court were
        inadequate to establish first-degree criminal sexual conduct,
        and that prosecutorial misconduct during closing argument and
        rebuttal denied him a fair trial.
        The Court of Appeals *held:*
        1. The determination whether the defendant was guilty of
        third-degree criminal sexual conduct turned on the credibility
        of the witnesses. The question of the credibility of the witnesses
        was for the trier of fact.
        2. To be convicted as an aider and abettor it is necessary that
        the prosecution establish the guilt of a principal, not a specifi-
        cally named principal.
        3. Conviction as an aider and abettor of the first-degree
        criminal sexual conduct does not require proof of personal
        injury of the victim.
        4. The findings of fact by the trial court were sufficiently
        specific.
        5. Because no objections were raised to the prosecution's
        remarks in the trial court, appellate review is precluded absent
        a showing that failure to review will result in a miscarriage of
        justice. No such showing was made.
        Affirmed.

1. CRIMINAL LAW — AIDING AND ABETTING — IDENTITY OF PRINCIPAL.
    Conviction as an aider and abettor requires that the guilt of a

REFERENCES

Am Jur 2d, Criminal Law § 167; Rape §§ 2, 8, 28.
See the Index to Annotations under Aiding and Abetting; Rape.

principal be established; it is not necessary to establish the identity of the guilty principal.

2. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — AIDING AND ABETTING — PERSONAL INJURY.

Conviction under the aider and abettor provision of the first-degree criminal sexual conduct statute does not require proof of personal injury to the victim (MCL 750.520b[1][d]; MSA 28.788[2][1][d]).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*Earl R. Spuhler,* for the defendant on appeal.

Before: WAHLS, P.J., and DOCTOROFF and G. S. ALLEN,* JJ.

G. S. ALLEN, J. Defendant was convicted of first-degree criminal sexual conduct, MCL 750.520b(1) (d); MSA 28.788(2)(1)(d), and third-degree criminal sexual conduct, MCL 750.520d(1)(b); MSA 28.788(4) (1)(b), following a bench trial in the Genesee Circuit Court. He was sentenced on January 11, 1989, to two concurrent terms of two to fifteen years in prison. He appeals as of right and raises three issues. We affirm.

At about 1:00 A.M. on July 30, 1987, complainant, then aged twenty-one, and her boyfriend's then ten-year-old sister, were invited by defendant to his home next door to eat pizza. Defendant, a married man, had lived next door to complainant for about two years. On that particular evening his wife was away from home on a camping trip.

Complainant and the child accepted defendant's

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

offer, went next door, ate pizza, drank orange pop, and watched TV. They then fell asleep. When complainant awoke she found herself in a double bed, as defendant, who was naked, was removing her pants. Though she resisted, defendant removed her pants, got on top of her and inserted his penis into her vagina. The assault lasted about ten minutes. She was uncertain whether he ejaculated.

Defendant then got up and held complainant's arms over her head while another person, a tall, dark, skinny man, got on top of her and inserted his penis into her vagina. Afterwards, the men let her go. She dressed and returned to her house, carrying the ten-year-old with her. About noon the next day, complainant was awakened by a telephone call from a sister who, upon being informed of what had happened, took complainant to Hurley Medical Center. There complainant was examined and blood, saliva, and semen samples were taken.

A serologist with the State Police testified that his analysis of the blood, semen, and saliva samples in the sexual assault kit and of the blood and saliva samples taken from defendant indicated that defendant was a Group A secretor with a genetic marker identified as PGM-2 -plus and that the complainant was a Group A secretor with a genetic marker identified as PGM-1 -plus. Examination of the complainant's underpants indicated the presence of the genetic markers found both in defendant and in complainant. It also indicated the presence of a genetic marker that did not belong to either defendant or complainant. He concluded that, while defendant could not be the source of any sperm found in complainant's underpants, defendant could not be excluded as the source of the seminal stain in her underpants.

The child testified that she and complainant went to defendant's house in late summer, where

she ate pizza and drank some pop. She stated that she started getting dizzy and her head hurt so she laid down on the couch and fell asleep. She said she woke up to go to the bathroom and heard the complainant screaming, but that a guy, who may or may not have been defendant, told her shut up and go lie down. She did as instructed. She explained she woke up the next day in the complainant's house.

Defendant testified that he did not invite complainant or the child to come over to his home on the night in question, and that they did not come to his house that night. He stated that he ordered pizza around 9:00 P.M. and that he and his son ate the pizza. Thereafter, he had three male visitors, one each at about 10:30, 11:00 and 12:00 P.M., respectively. One of the visitors that night and his son testified in support of defendant's version of what transpired.

I

Defendant first contends that the evidence was insufficient to support his CSC III conviction because the serologist could not positively identify defendant as the perpetrator and because several defense witnesses testified in support of defendant's denial that complainant was ever invited to his home or was present on the night in question. We disagree.

We review a challenge to the sufficiency of the evidence in an appeal from a bench trial by viewing the evidence presented in a light most favorable to the prosecution and determining whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Petrella,* 424 Mich 221, 268-270; 380 NW2d 11 (1985). A trier of fact may

make reasonable inferences from the facts of record, but may not indulge in inferences completely unsupported by any evidence, either direct or circumstantial. *Id.,* 275.

The essential elements of the offense of CSC III, as charged in the instant case, are: (1) sexual penetration of the complainant, (2) achieved by force or coercion. MCL 750.520d(1)(b); MSA 28.788(4)(1)(b); *People v Hurst,* 132 Mich App 148, 151; 346 NW2d 601 (1984). Force or coercion is defined as:

> (i) When the actor overcomes the victim through the actual application of physical force or physical violence.
> (ii) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats. [MCL 750.520b(1)(f); MSA 28.788(2)(1)(f).]

Complainant unequivocally testified that, against her will, defendant undressed her and inserted his penis into her vagina for about ten minutes. That the sexual entry was against complainant's will and that an assault occurred that night in defendant's home is corroborated by the testimony of the ten-year-old companion of complainant who testified that she awoke in defendant's house to hear complainant screaming and was told by "some guy" to "[s]hut up or go lay down." Defendant, however, denied the assault took place. Two or more defense witnesses supported his testimony in part. On this record, the question, then, is one of credibility. Credibility is a matter for the trier of fact to ascertain. We will not resolve it anew. *People v Jackson,* 178 Mich App 62, 65; 443 NW2d 423 (1989).

Defendant also faults the trial court for finding

sufficient evidence to convict defendant of CSC I. The trial court specifically found in part:

(1) That the unidentified man committed a sexual act by a penetration of the complainant's genital opening by his penis.

(2) That at the time of the sexual act this unidentifed [sic] man was aided or assisted by the defendant's action of holding the complainant's arms down.

(3) That the unidentified man and the defendant used force to commit the sexual act and overcame the complainant through the actual application of physical force.

The Court therefore concludes, based on these findings of fact, that under MCL 750.520b(1)(d)(ii) the unidentified man has committed the crime of criminal sexual conduct in the first degree, and that the defendant pursuant to the aiding abetting statute (MCL 1767.391) [sic] is therefore guilty of criminal sexual conduct in the first degree as charged in Count I.

Defendant argues that, unlike the usual case, no principal has been identified whom defendant can be said to have aided and abetted. Relying on established case law that stands for the proposition that, although it is unnecessary that the principal actually be convicted, it is still necessary to establish the guilt of the principal, see *People v Burgess,* 67 Mich App 214; 240 NW2d 485 (1976), lv den 397 Mich 830 (1976); *People v Williams No 1,* 45 Mich App 623; 207 NW2d 176 (1973); *People v Laine,* 31 Mich App 271; 187 NW2d 505 (1971), lv den 385 Mich 752 (1971), defendant argues that, in the instant case, the unknown principal's guilt cannot be established because plaintiff was unable to identify him. The question raised may be one of first impression.

Defendant is correct that a defendant may not

be convicted as an accessory where the guilt of a principal has not been shown. *People v Brown,* 120 Mich 765, 771, 772; 328 NW2d 380 (1982). However, this rule "only applies to those cases in which legally insufficient evidence is adduced to permit the conclusion that there was *a* guilty principal." (Emphasis added.) *Id.,* 772. To place the issue of aiding and abetting before a trier of fact, the evidence need only tend to establish that more than one person committed the crime, and that the role of a defendant charged as an aider and abettor amounts to something less than the direct commission of the offense. *Id.,* 770. We can find no case law that requires that the evidence must establish that a particular, *named* individual was the principal. In fact, this Court's decision in *Brown* strongly suggests the opposite is true. In *Brown,* the named principal and the accessory were tried together. The jury acquitted the principal but convicted the accessory as an aider and abettor. This Court upheld the accessory's conviction because the evidence established that a third-party prosecution witness who had pled guilty of second-degree murder at an earlier date, was "a guilty principal." *Id.,* 772. Therefore, we conclude that the evidence need not show that a specifically named individual was the guilty principal, but only that some individual was a guilty principal.

In the instant case, the evidence was overwhelming that there was a guilty principal, albeit his name, rank, and social security number remains unknown. Complainant testified that a second man had intercourse with her against her will while defendant held her arms so that she could not resist. This testimony was corroborated by the state serologist who found on complainant's underpants genetic markers belonging to complainant,

defendant, and a second male person. This is not a case of a phantom rape or a phantom rapist. Only the rapist's identity remains unknown. Therefore, we find that the prosecution presented legally sufficient evidence to support defendant's conviction as an aider and abettor.

In addition to the lack of an identified principal, defendant argues that the evidence was insufficient to support a conviction of first-degree criminal sexual conduct because no personal injury to complainant was established. In support of this argument defendant cites *Petrella, supra.* However, in *Petrella,* the convictions challenged were secured under MCL 750.520b(1)(f); MSA 28.788(2) (1)(f), which provides in part:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> \*   \*   \*
>
> (f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration.

The Supreme Court noted in *Petrella* that subsection (f) was one of eight aggravating circumstances set forth in the statute under which sexual penetration with another person could constitute first-degree criminal sexual conduct. *Id.,* 239. Subsection (f) is not the subsection under which the trial court found defendant guilty in the present case. Instead, as noted earlier, the trial court found guilt under the entirely different circumstances set forth in subsection (d)(ii). Consequently, it was unnecessary for the court to discuss "personal injury" and the trial court's failure to do so is not error.

## II

Defendant's second claim of error pertains to alleged inadequate findings of fact made by the trial court pursuant to MCR 2.517(A)(1). Defendant asserts that the findings were inadequate because they "do not discuss or even mention the physical injury or mental anguish element necessary to elevate the sexual assault to first degree. The findings of the court did not even indicate an awareness on the trial court's part that this element is even required." Of course not! As noted earlier, defendant was not found guilty under subsection (f) but under the circumstances described in subsection (d).

The rigid standard announced in *People v Davis,* 126 Mich App 66, 70-71; 337 NW2d 315 (1983), requiring specific findings of fact regarding each element of the alleged offense, has since given way to the standard announced in *People v Rushlow,* 179 Mich App 172, 177-178; 445 NW2d 222 (1989), that the requirements of MCR 2.517(A)(1) are met where it appears that the trial court was aware of the factual issues and has correctly applied the law. Our review of the trial court's well-written opinion discloses that the trial court fully complied with that standard.

## III

Defendant's third and final argument is that prosecutorial misconduct occurring during closing argument and rebuttal denied him a fair trial. Appellate review of alleged improper remarks is precluded if a defendant fails to make timely and specific objections, unless a failure to review the claim would result in a miscarriage of justice. *People v Duncan,* 402 Mich 1, 16-17; 260 NW2d 58

(1977). A miscarriage of justice arises when the prejudicial effect of the remark was so great that it could not have been cured by an appropriate instruction. *Id.,* 17.

In the instant case, defendant raised no objection to the remarks he now claims were improper. No miscarriage of justice will result from our failure to review defendant's claim. Nevertheless, we will briefly address its merits.

Claims of prosecutorial misconduct are evaluated on a case-by-case basis. We must examine the pertinent portion of the record and evaluate the alleged improper remarks in context. *People v Foster,* 175 Mich App 311, 317; 437 NW2d 395 (1989). The test is whether defendant was denied a fair and impartial trial. *Id.*

Defendant argues that the prosecutor shifted the burden of proof when she stated:

> The credibility of [complainant] is probably the only issue in this case because her account diverges from what the Defendant says happened.

We do not read the prosecution's comment as suggesting that defendant must prove something or present a reasonable explanation for damaging evidence, which is improper. *Id.* Instead, when viewed in context, we find the statement is nothing more than a prefatory remark leading into the prosecution's comment regarding the complainant's credibility. This is proper. *People v Sharbnow,* 174 Mich App 94, 100; 435 NW2d 772 (1989). Further, this is not a statement to a jury, but to a judge whose written opinion clearly reflects a full and clear understanding of the facts and the law.

Defendant also challenges the prosecution's statement "that the victim was physically incapacitated by the sexual assault." Defendant asserts

that this statement was made without corroborative evidence. The actual statement made by the prosecution was that complainant "felt physically incapacitated." This statement is a reasonable inference supported by complainant's testimony that, after drinking the pop, she "passed out," and that when she attempted to cry out during the assault she could not make a loud noise because she felt weak, as if she had taken a sleeping pill. *Id.*

Defendant next argues that the prosecution vouched for the credibility of the ten-year-old child. We disagree. Read in context, the prosecution's argument did not violate *People v Erb,* 48 Mich App 622, 631; 211 NW2d 51 (1973). The trial court properly could consider the age of the witness and the consistency of her testimony. *Erb* is clearly distinguishable.

Lastly, defendant claims that "there is simply no evidence to support the prosecution's assertion that the complainant was drugged." We disagree. While no medical testimony to this effect was presented, complainant's testimony that the child complained of dizziness and headache after she ate pizza and drank pop and then fell asleep, that complainant became sleepy and passed out after doing same, that complainant felt weak in defendant's bedroom, and that she dropped the child while carrying her back to the house and the child never woke up, supported the prosecution's argument to the trial judge that there was reason to conclude that something had been done to complainant and the child to alter their ability to be conscious. We find the prosecution's statement to be a reasonable inference, given defendant's testimony. *Sharbnow, supra.*

Affirmed.