# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERESA HURTADO ALVAREZ,

        Defendant-Appellant.

UNPUBLISHED
April 28, 2015

No. 319988
Wayne Circuit Court
LC No. 13-005816-FC

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

Defendant, Teresa Hurtado Alvarez, appeals as of right from her jury trial convictions of second-degree murder, MCL 750.317, and felony murder, MCL 750.316(1)(b). The trial court sentenced defendant to life in prison without parole. We affirm, but remand for the administrative task of correcting defendant's judgment of sentence.

## I. FACTS

Defendant's conviction arises out of the death of Margaret Theut shortly after the Thanksgiving holiday in 2011. Theut, the adoptive parent of defendant's brother, also cared for defendant, providing her with clothing, gifts, and financial assistance into her adulthood. In the weeks prior to Theut's disappearance, defendant told several people that Theut had passed away and had left defendant a portion of her estate. In interviews with police, defendant admitted that she was with Theut at her home the night of November 26, 2011, the last day Theut was seen alive. The morning of November 27, 2011, a neighbor noticed that Theut's gate was open, and upon further investigation, discovered that Theut was missing, along with her car, a Chevrolet Impala. While Theut's neighbors were looking for Theut and her missing vehicle, defendant was driving the vehicle, showing it to friends and claiming that she had inherited it from Theut. Theut's purse, which contained her identification, credit cards, and cash, was in the trunk of the car. In the early morning hours of the following day, a witness saw what appeared to be Theut's car stuck in the mud and marsh in a field near the northern end of Rouge Park, a park located around one-quarter mile from Theut's home. In addition, the witness saw what appeared to be a black tarp approximately 50 feet away from the car, near a line of trees. Approximately six months later, Theut's body was recovered underneath a tarp in a marshy area at the northern end of the park. By this time, all that remained of Theut's body was a partial skeleton, and a precise

-1-

cause of death could not be established. But based on the circumstances, Theut's death was ruled a homicide.

## II. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecutor did not present sufficient evidence to support her convictions of felony murder and second-degree murder. We review de novo challenges to the sufficiency of the evidence to determine if any rational trier of fact could determine that the essential elements of the crime were proven beyond a reasonable doubt. *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012). All conflicts in the evidence are resolved in favor of the prosecution. *Id*.

As our Supreme Court stated in *People v Smith*, 478 Mich 292, 318-319; 733 NW2d 351 (2007):

> The elements of first-degree felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316(1)(b), here larceny. [Quotation marks and citation omitted; alteration in original.]

The prosecution charged defendant as a principal and under an aiding and abetting theory, and the trial court instructed the jury accordingly. In *People v Riley (On Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003), our Supreme Court explained the elements required to prove felony murder under an aiding and abetting theory:

> To prove felony murder on an aiding and abetting theory, the prosecution must show that the defendant (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony.

The prosecution presented sufficient evidence for a rational jury to convict defendant of felony murder, either as a principal or under an aiding and abetting theory. Weeks before Theut disappeared, defendant began telling those close to her that Theut had committed suicide and that she inherited a portion of Theut's estate. Defendant went so far as to dress for and attend a fake funeral for Theut. Defendant acknowledged that she was with Theut in her home the night of her disappearance. Her cellular telephone records revealed that she placed several telephone calls to Theut that afternoon, and that she did so in a manner that blocked the incoming number from appearing on caller ID. Dontaye Hardeman, defendant's boyfriend, testified that defendant had left his mother's home the last day that Theut was seen alive, and that he expected defendant to return that night. However, she never did, and when defendant appeared the following morning,

she was driving Theut's Impala, explaining to others that she had inherited the vehicle from Theut. Theut's purse, including her identification, credit cards, and money, was in the trunk. Hardeman saw defendant take "hundreds" of dollars from the purse. In the early morning hours of the following day, a witness saw what appeared to be Theut's automobile stuck near a marshy area of Rouge Park, as well as what appeared to be a tarp, which was left near the car. The witness believed that the driver of the car was a six-foot-tall male. The car had to be towed out of the area that morning, and within hours, defendant was in possession of Theut's car, having it professionally cleaned. Despite this cleaning, when the vehicle was recovered by police, it was still partially covered in mud and grass.

Soon after her arrest, defendant told Hardeman that Theut was dead. At the time, Theut's body had not been recovered, and it was not known if she was dead or only missing. A rational juror could conclude that defendant knew Theut was dead at this time because she was present when Theut died. After her arrest, defendant asked Kimberly Brooks, Hardeman's mother, to hide the Impala for her and keep anyone else from accessing it, further demonstrating that defendant was conscious of her own guilt. Defendant gave multiple explanations of her whereabouts the night Theut disappeared. When asked during a police interview to explain what happened at Theut's home on the night of her disappearance, defendant stated that it was her fault, that she might as well die in prison, and that had she not gone to Theut's home that night, Theut would still be alive. In another police interview, which was attended by Janet Jenkins, defendant's former legal guardian, defendant indicated to Jenkins that if she told the police what happened to Theut, Jenkins would be in danger of physical harm. While defendant maintained that she had not killed Theut, her conduct and statements provided strong circumstantial evidence of her guilt.

Blood and DNA evidence also supported defendant's felony murder conviction. Investigators found blood on pillows and a blanket in Theut's home belonging to an unidentified female. While DNA analysis was unable to confirm that this blood belonged to Theut, this was because there were no known samples of Theut's DNA to which it could be compared. However, given the circumstances, a rational juror could conclude that the blood on the pillow and blanket belonged to Theut. DNA from the same person was found on a pair of gloves left inside Theut's Impala, along with that of two other individuals, indicating that two people were involved with Theut's death, or at a minimum, disposing of her body in Rouge Park. While the person who disposed of Theut's body was clearly not defendant, from the remaining circumstances, such as defendant's possession of Theut's vehicle, her presence in Theut's home the night of her disappearance, and her admission that Theut's death was her fault, a rational juror could infer that defendant was one of at least two people involved with Theut's death. Taking the evidence as a whole, a rational juror could conclude that defendant intended to kill Theut, given that she told others weeks before Theut's disappearance that Theut had died, that she either killed Theut herself or assisted another person in doing so, and that she did so in the process of committing a larceny, that being stealing Theut's vehicle and purse. Accordingly, the prosecution presented sufficient evidence to support defendant's felony murder conviction, either as having murdered Theut herself or by assisting another person in doing so. See *Smith*, 478 Mich at 318-319; *Riley*, 468 Mich at 140.

Defendant essentially argues that her convictions cannot stand because the prosecutor did not present direct evidence linking her to Theut's death. While it is true that the prosecutor never

presented evidence of anyone witnessing defendant kill Theut or participating in her murder, "[t]he prosecution need not present direct evidence linking a defendant to the crime in order to provide sufficient evidence to support a conviction . . . ." *People v Kissner*, 292 Mich App 526, 534; 808 NW2d 522 (2011). Rather, "[c]ircumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded to those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). As such, when reviewing claims based on sufficiency of the evidence, we view all the evidence in a light most favorable to the prosecution and draw all reasonable inferences in its favor. *Id.* As explained, using reasonable inferences drawn from the evidence presented, a rational juror could conclude that defendant, either directly or by assisting another person, committed felony murder. Defendant's argument lacks merit.

Defendant also challenges the sufficiency of the evidence with regard to her second-degree murder conviction. She was charged with and convicted of the lesser offense of second-degree murder arising out of Theut's death. While defendant does not expressly raise a double jeopardy challenge, we note that "[m]ultiple murder convictions arising from the death of a single victim violate double jeopardy." *People v Clark*, 243 Mich App 424, 429; 622 NW2d 344 (2000). "Thus, defendant cannot properly be convicted of both first-degree murder and the lesser included offense of second-degree murder for the death of a single victim." *Id.* The proper remedy in such a situation is to vacate the second-degree murder conviction. *Id.* At sentencing, the trial court recognized as much and explained that the sentences for defendant's convictions would merge, necessitating only a single sentence for felony murder. Thus, it appears that the trial court intended that defendant stand convicted only of felony murder. However, while noting that the convictions merge, defendant's judgment of sentence reflects two convictions and two sentences of life without parole. We remand for the administrative task of amending defendant's judgment of sentence to vacate the second-degree murder conviction and sentence.

## B. AIDING AND ABETTING INSTRUCTION

Defendant argues that the trial court erred when it instructed the jury regarding the theory of aiding and abetting. We disagree. Claims of instructional error involving a question of law are reviewed de novo, but a trial court's determination that a jury instruction applies to the facts of a particular case is reviewed for an abuse of discretion. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). "The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." *Id.* An abuse of discretion occurs "when the trial court chooses an outcome falling outside [the] principled range of outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him [or her]." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (citation and quotation omitted). When a trial court is asked to give a particular instruction, the instruction must be given if it is supported by the evidence. *Id.* "To place the issue of aiding and abetting before a trier of fact, the evidence need only tend to establish that more than one person committed the crime, and that the role of a defendant charged as an aider and abettor amounts to something less than the direct commission of the offense." *People v Vaughn*, 186 Mich App

-4-

376, 382; 465 NW2d 365 (1990). See also *Riley*, 468 Mich at 140 (explaining the elements of felony murder under an aiding and abetting theory). It was not necessary for the prosecutor to demonstrate precisely who other than defendant participated in the crime. *Vaughn*, 186 Mich App at 382. Rather, it was sufficient for the prosecutor to present evidence tending to show that "some individual was a guilty principal." *Id*.

There was ample evidence suggesting that another individual was involved in Theut's death. A man was seen driving what appeared to be Theut's car and leaving a tarp in Rouge Park shortly after Theut's disappearance. DNA evidence taken from gloves found inside the Impala demonstrated that at least three people had come in contact with the gloves. One of these three was likely Theut, leading to a conclusion that two people used the gloves, either when killing Theut or when disposing of her body. Defendant also indicated that if she told police everything that happened, Jenkins would be in danger. This statement would suggest that someone who was not in police custody was also involved in the murder, someone who had threatened defendant if she implicated him or her. Thus, there was evidence indicating that someone other than defendant was involved in Theut's murder.

The evidence also demonstrated that defendant's role in Theut's death may have been less than directly committing the murder. While describing Theut's death as being her own fault, defendant maintained that she had not actually killed Theut. Defendant acknowledged being present in Theut's home the night she disappeared. She admitted to having keys to Theut's house, which showed no signs of forced entry. The day after Theut disappeared, defendant had possession of Theut's car, a car that appeared to have been used by someone else to dispose of Theut's body and then returned to defendant's possession. In a conversation that took place shortly after her arrest, defendant stated that Theut was dead. Because Theut's body had not been found, defendant's knowledge of this fact would likely only have come from her having been involved in Theut's murder. Taken together, this evidence suggested that if, as she told police, defendant did not kill Theut herself, she assisted someone else in committing the murder by granting him or her access to Theut's home and providing a vehicle with which to dispose of the body. Because the evidence supported a theory that defendant aided and abetted an unknown principal in the murder, *Vaughn*, 186 Mich App at 382, once the instruction was requested, the trial court was required to provide it, *Rodriguez*, 463 Mich at 472, and the trial court did not abuse its discretion by doing so.

Affirmed, but remanded for the administrative task of amending defendant's judgment of sentence in accordance with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Henry William Saad