# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

KENISHA LATORI FAISON,

       Defendant-Appellant.

UNPUBLISHED
May 12, 2015

No. 313857
Macomb Circuit Court
LC No. 2012-000991-FC

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

Defendant appeals her jury trial convictions for: (1) aiding or abetting the solicitation of murder under MCL 750.157b and MCL 767.39; and (2) conspiracy to commit first-degree premeditated murder under MCL 750.157a and MCL 750.316(1)(a). For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case involves a love triangle that involved codefendant Deon Taylor,[1] defendant, and defendant's half-sister, Kia Faison. Taylor had a longstanding relationship with Kia, and is the father of one of her children. In 2005, Taylor was convicted of sexually abusing Kia's niece and sent to prison. Nonetheless, Kia resumed her relationship with Taylor after his release, and the couple shared a residence. During this time period, Taylor also began a sexual relationship with defendant, which caused tension between her and Kia. In 2012, Taylor was charged with molesting Kia's daughter, and incarcerated once again.

While in the Macomb County Jail, Taylor approached a former associate, and asked him to kill Kia and her two children so that Kia's daughter could not accuse him of molesting her.

---

[1] A jury convicted Taylor, who was tried separately from defendant, of solicitation to commit murder and conspiracy to commit first-degree premeditated murder. Our Court affirmed his convictions in *People v Taylor*, unpublished opinion per curiam of the Court of Appeals, issued March 25, 2014 (Docket No. 313677). The opinion also contains further information on the factual background of this case.

-1-

The former associate informed the Macomb County Sheriff's Department of Taylor's plans, and the Department gave him a small microphone to wear for subsequent meetings with Taylor. In February 2012, Taylor and the informant had a detailed and graphic discussion about how best to commit the murders. They also discussed payment (which would come from a large life insurance policy Kia had purchased, and of which Taylor was supposedly the beneficiary),[2] and Taylor stressed that defendant would assist the informant by providing keys to Kia's house and documentation related to the life insurance policy.

At the instruction of the sheriff's department, the informant contacted defendant via a cell phone number that Taylor supplied. He arranged to meet with defendant in the jail lobby, before defendant visited Taylor. At the meeting, which was monitored by the sheriff's department,[3] defendant and the informant discussed the logistics of carrying out the murders,[4] and defendant expressed approval of the plan to kill her half-sister and her niece and nephew.[5] She also stated that she would accompany defendant into the home prior to the shootings, and help him retrieve documentation on the life insurance policy. At some point during the meeting, defendant removed three keys from a ring and handed them to the informant, and explained which doors they opened at Kia's home.

The prosecutor subsequently charged defendant with: (1) aiding or abetting the solicitation of murder under MCL 750.157b and MCL 767.39; and (2) conspiracy to commit

---

[2] Kia testified that she actually removed Taylor as a beneficiary of her life insurance policy in January 2012, a fact of which Taylor and defendant were apparently not aware.

[3] The prosecutor introduced the recording of the informant's meeting with defendant as evidence, and played the audio recording for the jury.

[4] Among other things, defendant explained the layout of Kia's house to the informant, and told him of the family's sleeping arrangements and schedule. Defendant also made suggestions about how best to carry out the murders, and told defendant to: (1) tie Kia's legs together because she practiced kickboxing; (2) exercise discretion at all times because of "nosey" neighbors and the proximity of the Eastpointe police station to Kia's home; (3) not park his car in Kia's driveway.

[5] Specifically, the informant testified that he asked defendant whether she knew that he intended to murder Kia and her family, and defendant explained that she approved of his plans. The informant and defendant went on to discuss the potential murders in great detail, which did not dissuade defendant, as noted, from offering her own suggestions on how best to carry out the shootings.

The prosecution also presented the jury a handwritten letter bearing defendant's signature, and with her return address. Guards found the document in a search of Taylor's cell effected soon after defendant told Taylor during a jail visit that she had sent him a letter and some photographs. In the letter, defendant states:

> I will never leave your side. . . . I'm going to have someone take care of Kia. I promise you that. She means nothing to me. And she is a liar, sneaky and don't deserve to be living [sic]. I'm just so outraged about everything.

first-degree premeditated murder under MCL 750.157a and MCL 750.316(1)(a). At trial, the jury heard exhaustive testimony from the informant, Kia, and defendant, who denied that she approved of the plan to murder her family members. A detective with the sheriff's department testified to his work with the informant, and voiced his belief that the informant saved the lives of Kia and her children. He also informed the jury that the sheriff's department possessed numerous audio recordings of weekly visits between Taylor and defendant in which defendant expressed approval of the murders and a willingness to help the informant facilitate them.[6]

In October 2012, the jury found defendant guilty as charged. On appeal, she argues that: the prosecution presented insufficient evidence to sustain her conviction of solicitation to commit murder. In her standard 4 brief, defendant also makes the unsupported assertions that: (1) the prosecution presented insufficient evidence to sustain her conviction of conspiracy to commit murder; and (2) she was denied due process because the trial court issued improper jury instructions, to which her counsel did not object.

## II. STANDARD OF REVIEW

A challenge to the sufficiency of evidence is reviewed de novo. *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004). When it determines whether sufficient evidence exists "to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000) (internal quotation and citation omitted). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

## III. ANALYSIS

Criminal solicitation of murder under MCL 750.157b is a "specific intent crime" that

> . . . requires proof that the defendant intended that a murder would occur. Solicitation to commit murder occurs when (1) the solicitor purposely seeks to have someone killed and (2) tries to engage someone to do the killing. Solicitation is complete when the solicitation is made. A contingency in the plan may affect whether the victim will be murdered, but does not change the solicitor's intent that the victim be murdered. Actual incitement is not necessary for conviction. [*People v Crawford*, 232 Mich App 608, 616; 591 NW2d 669 (1998).]

"To place the issue of aiding and abetting before a trier of fact, the evidence need only tend to establish that more than one person committed the crime, and that the role of a defendant

---

[6] The prosecutor introduced the audio recordings of these visits between defendant and Taylor as evidence and played them for the jury.

charged as an aider and abettor amounts to something less than the direct commission of the offense." *People v Vaughn*, 186 Mich App 376, 382; 465 NW2d 365 (1990). "The phrase 'aids or abets'" encompasses "any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004). "In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime." *Id.* at 71. "[W]hether the defendant performed acts or gave encouragement that assisted" must be determined "on a case-by-case basis." *Id.* (internal quotation and citations omitted). "An aider and abettor's state of mind may be inferred from all the facts and circumstances." *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999).

Here, the underlying crimes that defendant is accused of aiding and abetting—solicitation to commit murder and conspiracy to commit murder—were unquestionably committed by Taylor, who "engaged" the informant to murder Kia and her children.[7] *Crawford*, 232 Mich App at 616. The prosecution presented ample evidence that defendant also solicited the informant to commit murder, by aiding and abetting Taylor's efforts to do so. Again, she met with the informant in the Macomb County Jail, discussed the logistics of the murder, and indicated her approval for the violent plans—demonstrating intent to have Kia and her children killed. *Carines*, 460 Mich at 758. She also provided the informant with keys to Kia's home, and offered to assist him in obtaining documentation on the life insurance policy with which Taylor planned to pay the informant for carrying out the killings. In addition, she "encourage[d] [and] support[ed]" Taylor in his plans to engage the informant to murder Kia and her children. *Moore*, 470 Mich at 63.

The prosecution therefore provided more than sufficient evidence for a jury to find beyond a reasonable doubt that defendant was guilty of aiding and abetting solicitation to commit murder pursuant to MCL 750.157b.[8] *Nowack*, 462 Mich at 399-400.

---

[7] As noted in n 1, see our Court's opinion affirming Taylor's convictions for further background on his efforts to have Kia and her children murdered. *People v Taylor*, unpublished opinion per curiam of the Court of Appeals, issued March 25, 2014 (Docket No. 313677).

[8] Defendant's arguments in her standard 4 brief are frivolous and unsupported. As recounted above, the prosecution provided substantial evidence that defendant participated in a conspiracy to commit first-degree, premeditated murder. Defendant's argument to the contrary is disjointed and unsupported. A litigant may not merely announce his position and leave it to our Court to discover and rationalize the basis for his claims. *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001).

As for her unpreserved complaint regarding the jury instructions, the record indicates that the trial court, though it made a minor mistake in its explication of renunciation as affirmative defense to the charge of solicitation in its preliminary instructions, correctly recited the elements of renunciation during the final jury instructions. Jury instructions are not erroneous if they fairly present to the jury the issues to be tried and sufficiently protect the defendant's rights.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Henry William Saad

---

*People v Knapp*, 244 Mich App 361, 376; 624 NW2d 227 (2001). The trial court's instructions achieved both objectives and defendant's assertions otherwise are without merit. Defendant's counsel cannot be held ineffective for failure to make a meritless objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).