# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ARTHUR LEE WILLIAMS,

        Defendant-Appellant.

UNPUBLISHED
January 19, 2017

No. 329704
Saginaw Circuit Court
LC No. 15-041096-FC

---

Before: O'CONNELL, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

Defendant appeals by right from his convictions following a jury trial of assault with intent to do great bodily harm less than murder, MCL 750.84, carrying a deadly weapon with unlawful intent, MCL 750.226, felon in possession of a firearm, MCL 750.224f, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to serve concurrent terms of imprisonment of 10 to 20 years each for the assault, armed with unlawful intent, and felon in possession convictions, to be served consecutively to concurrent terms of two years for each of the associated felony-firearm convictions. We affirm.

This case arises out of the shooting of Demarcus Williams at a Speedway gas station. Aaron Smith testified that he, Demarcus Williams, and two other men were at the gas station between 1:30 and 2:00 a.m. the day of the shooting. Christopher Macon testified that he arrived at the gas station around 1:30 a.m. Macon testified he became involved in an "altercation" with someone and was "jumped" by several people; a fight ensued. Reginald Grady, who drove Macon to the gas station, testified that that during the fight he saw a person in a black hoodie and shorts point at someone and yell, "Somebody got a gun." Macon testified that he saw defendant at the gas station before the fight started and that he was wearing white shorts and a "black hoodie" and had what "looked like a gun" in the pocket of the hoodie. According to Smith, as he was talking to a girl and pumping gasoline for her, he heard several people yelling, followed by gunshots. Demarcus Williams testified that he remembered being shot twice in the leg and grazed on the arm, but that he did not recall precisely when that happened.

Defendant's sole argument on appeal is that the trial court denied him his rights to due process and a jury trial by denying his request to instruct the jury on self-defense. The court

explained its reasoning for denying to instruct the jury on self-defense as follows: "Well, my position is that, yes, a felon in possession of a firearm can assert self-defense, but I don't think the evidence in this case sufficiently establishes the elements necessary for it and I'll deny the motion." This Court generally reviews de novo a claim of instructional error, but "the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014).

MCL 780.972 governs whether an individual may raise a claim of self-defense:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

(b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual.

(2) An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

In this case, defendant stipulated to being a felon ineligible to possess a firearm; therefore, he was "engaged in the commission of a crime at the time he or she use[d] deadly force." MCL 780.972(1).

But as the trial court recognized, felons not allowed generally to possess firearms may assert self-defense where there is evidence that would "allow a jury to conclude that criminal possession of a firearm was justified because the accused had an honest and reasonable belief that the use of deadly force was necessary to prevent imminent death, great bodily harm, or sexual assault to himself or herself or to another." *People v Guajardo*, 300 Mich App 26, 40; 832 NW2d 409 (2013). In *Guajardo*, this Court explained the relationship between the felon and possession of a weapon for this purpose:

We note that the temporal relationship between the time the accused came into possession of the firearm and the time he or she deployed deadly force is

relevant to determining whether the accused had an honest and reasonable belief that possession of a firearm was justified to prevent imminent death, great bodily harm, or sexual assault. . . . Thus, both the amount of time an accused possessed a firearm and the manner in which an accused came into possession of the firearm can be part of a totality-of-the-circumstances inquiry into whether there is evidence that a felon's possession of a firearm was justified because the felon honestly and reasonably believed that the use of deadly force was necessary to prevent imminent death, great bodily harm, or sexual assault. [*Id*. at 40 n 4.]

Defendant's argument fails in two respects. First, defendant possessed the weapon in advance of its becoming necessary, an act that fails *Guajardo*'s "amount of time" inquiry. Macon testified that he saw defendant with what looked like a gun before the fight, and thus before any threat was apparent in response to which defendant might have had a need to act in defense of himself or another. And no evidence supported an inference that defendant acquired the weapon immediately before, or during, the fight. Accordingly, nothing in evidence would have allowed the jury to conclude that defendant took and maintained possession of a firearm only for the time necessary to respond to an imminent threat.

Second, there was no evidence to suggest that defendant's resort to potentially lethal force satisfied the legal standard for necessity. "The reasonableness of a person's belief regarding the necessity of deadly force depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *Id.* at 42 (internal quotation marks and citation omitted). In this case, no witness testified that anyone assaulted defendant. Although a person who witnessed Macon being struck by several others might reasonably conclude that he was under a risk of great bodily harm, defendant presented no evidence that he thought Macon was in any such danger or otherwise fired his gun in hopes of rescuing Macon. Further, had that been defendant's concern, he could have taken non-lethal actions, such as attempting to pull the attackers away from Macon.

Moreover, one witness testified that defendant told him he shot Demarcus Williams "over a female." There might be circumstances were a dispute over a woman could lead to a situation where a person might reasonably believe that the use of deadly force was necessary. But absent such evidence (as is the case here), shooting someone "over a female" does not, in and of itself, implicate self-defense.

Given the "totality-of-the-circumstances," it would not be reasonable for a person in defendant's position to think that firing a handgun into a group of people at a gas station was necessary to fend off a severe threat to himself or another. Therefore, the trial court did not

-3-

abuse its discretion when it determined that the evidence did not support a claim of self-defense and so declined to instruct the jury on it.[1]

We affirm.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Christopher M. Murray

---

[1] Defendant grafts onto his argument the assertion that various witnesses lacked credibility, but does not explain how his credibility attacks bear on the question whether an instruction on self-defense would have been appropriate. While the credibility of the prosecution's witnesses may affect whether the jury finds guilt beyond a reasonable doubt, "[c]redibility is a matter for the trier of fact to ascertain. [This Court] will not resolve it anew." *People v Vaughn*, 186 Mich App 376, 380; 465 NW2d 365 (1990).