*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 3, 2020

Plaintiff-Appellee,

v

No. 330612
Oakland Circuit Court
LC No. 2014-251162-FC

ALEX JAY ADAMOWICZ,

Defendant-Appellant.

ON REMAND

Before: STEPHENS, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

This case is before us on remand from the Michigan Supreme Court to address (1) whether the prosecutorial errors of (a) "asking the jury to consider the defendant's 'moral duty' to retreat from his own dwelling in relation to his self defense claim," and (b) "eliciting testimony and presenting argument regarding the defendant's retrospective assessment of his ability to retreat, where it was undisputed that the defendant had no duty to retreat," constituted plain error affecting substantial rights, and (2) "whether the defendant was deprived of his right to the effective assistance of counsel with respect to the failure to call an expert witness and the failure to object to the prosecutor's errors identified above." *People v Adamowicz*, 503 Mich 880, 880; 918 NW2d 532 (2018).

In answering these questions, we conclude that the prosecution's errors did not constitute plain error affecting defendant's substantial rights, and the trial court properly concluded that defendant did not receive ineffective assistance of counsel.

## I. FACTS AND PROCEDURAL HISTORY

The facts of this case were provided in a previous opinion by this Court as follows:

This case arises from the death of John Watson at the Tivoli Apartments in Walled Lake. Watson and defendant lived in the same building. In the early morning hours of April 12, 2014, Watson entered defendant's apartment to drink

-1-

and smoke "weed." According to defendant, Watson became agitated. When defendant asked Watson to leave and threatened to call the police, an altercation ensued, which ended with defendant cutting Watson's throat. Watson died from the injury.

Defendant covered Watson's body with blankets, and moved him from the couch to a closet in the apartment. He also attempted to clean the blood spatter from the walls and the couch. Defendant continued to live in the apartment until May 11, 2014, when defendant's mother, Marie Holley, discovered Watson's body. That day, the two drove to the Wixom Police Station. While at the station, defendant spoke with Walled Lake Police Detective Andrew Noble and confessed to killing Watson, but maintained that he did so in self-defense. [*People v Adamowicz*, unpublished per curiam opinion of the Court of Appeals, entered June 22, 2017 (Docket No. 330612), p 1 (footnote omitted), rev'd and vacated in part 503 Mich 880 (2018).]

Defendant was convicted by a jury of first-degree murder, MCL 750.316(1)(a), and sentenced to life imprisonment without parole. *Id*. This Court previously affirmed his conviction and sentence. *Id*. at 1, 10.

Defendant filed an application for leave to appeal in the Michigan Supreme Court, which vacated the part of this Court's opinion regarding ineffective assistance of counsel, and directed this Court to remand the matter to the trial court for an evidentiary hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). *Adamowicz*, 503 Mich at 880. The Supreme Court also vacated the portion of this Court's opinion regarding prosecutorial error, determining that errors were made, and directing this Court to review the issue for plain error affecting substantial rights upon remand. *Id*.

This Court entered an order remanding the matter to the trial court for a *Ginther* hearing. *People v Adamowicz*, unpublished order of the Court of Appeals, entered November 21, 2018 (Docket No. 330612). The trial court held a *Ginther* hearing over the course of four days in the spring of 2019, with oral arguments heard on December 4, 2019. On March 9, 2020, the trial court entered an order concluding that (1) "[d]efense counsel's decision not to call an expert was an objectively reasonable part of the [d]efendant's defense strategy and even if an expert had been called, because such testimony was not credible, there was no reasonable probability that the result of the proceeding would have been changed," and (2) "[d]efense counsel's decision not to object to the prosecutor's errors of asking the jury to consider the [d]efendant's 'moral duty' to retreat from his own dwelling in relation to his self-defense claim and eliciting testimony and presenting argument regarding the [d]efendant's retrospective assessment of his ability to retreat was objectively reasonable; even if [d]efense counsel had objected to the prosecutor's errors, there was no reasonable probability that the results of the proceeding would have changed." This Court has reviewed the transcripts of the hearing, the exhibits entered at the hearing, as well as the parties' supplemental briefs.

## II. PROSECUTORIAL ERROR

Claims of prosecutorial error are reviewed on a case-by-case basis. *People v Orlewicz*, 293 Mich App 96, 106; 809 NW2d 194 (2011). "[A]ny challenged remarks are reviewed in context." *Id*. "The test for prosecutorial misconduct is whether the defendant was deprived of a fair trial." *Id*.

In this Court's previous opinion, we determined "even assuming, without deciding, that the prosecutor erred by eliciting the testimony, defendant fails to demonstrate that the error affected the outcome of his trial." *Adamowicz*, unpub op at 6. The Supreme Court determined that the prosecutor eliciting testimony and making argument regarding defendant's "moral duty" to retreat and defendant's retrospective ability to retreat was in error because it was inconsistent with the Self-Defense Act (SDA), MCL 780.971 *et seq.*, and remanded to this Court for reconsideration of whether the errors constituted plain error affecting substantial rights. *Adamowicz*, 503 Mich at 880.

"To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The third requirement requires a showing of prejudice, "i.e., that the error affected the outcome of the lower court proceedings." *Id*. The defendant bears the burden to establish prejudice. *Id*. If a defendant satisfies these requirements, it is within the discretion of this Court whether to reverse. *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted).

Although the prosecutor committed plain error in eliciting testimony and making argument regarding defendant's "moral duty" to retreat and defendant's retrospective assessment of his ability to retreat, we cannot conclude that defendant has met his burden of establishing that these plain errors affected his substantial rights, i.e., affected the outcome of the lower court proceedings. *Id*. at 763. Although the prosecutor argued in his closing argument that defendant had a "moral duty" to retreat, he also clearly stated that, by law, defendant had no duty to retreat. The prosecutor stated that he introduced the evidence regarding defendant's ability to flee to challenge whether defendant honestly and reasonably believed that he needed to use deadly force. Moreover, the court gave a jury instruction providing that a person has no duty to retreat when attacked at home. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (citations omitted).

Moreover, the evidence at trial was more than sufficient to establish the elements of first-degree murder—"(1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bass*, 317 Mich App 241, 265-266; 893 NW2d 140 (2016) (citation omitted). The defendant's actions before and after a crime may be considering when determining premeditation. *Id*. at 266. Defendant slit Watson's throat, concealed the body for several weeks, tried to clean up the scene, made online searches regarding drinking bleach and rat poison, and testified that he wanted to "get back at" Watson. We therefore cannot conclude that the "forfeited error resulted in the conviction of an actually innocent defendant," *Carines*, 460 Mich at 763, and reversal is not warranted.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

The Supreme Court determined that the development of a factual record was required for defendant's claim of ineffective assistance of counsel, and directed this Court to remand the matter to the trial court for a *Ginther* hearing. *Adamowicz*, 503 Mich at 880, citing MCR 7.305(C)(8) and MCR 7.211(C)(1)(a)(*ii*). At the conclusion of the evidentiary hearing, the trial court considered whether defendant was denied the effective assistance of counsel by defense counsel's failure to call an expert witness and failure to object to the prosecutorial errors noted above. The trial court determined that defendant did not receive ineffective assistance of counsel in either regard.

This issue is now preserved subsequent to the *Ginther* hearing. *People v Cooper*, 309 Mich App 74, 79; 867 NW2d 452 (2015). Whether the defendant is denied effective assistance of counsel is a mixed question of fact and law. *Id*. "A judge must first find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id*. (quotation marks and citation omitted). The trial court's factual findings are reviewed by this Court for clear error, and constitutional determinanes are reviewed de novo. *Id*. The test for determining ineffective assistance of counsel is as follows:

> There is a presumption that counsel was effective, and a defendant must overcome the strong presumption that counsel's challenged actions were sound trial strategy. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). To establish a claim of ineffective assistance of counsel, " 'the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the "counsel" guaranteed by the Sixth Amendment.' " *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), quoting *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Furthermore, "[w]hether defense counsel's performance was deficient is measured against an objective standard of reasonableness." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Thus, to prevail, a defendant must show that "counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 US at 687-688, and he must show that he was prejudiced by counsel's performance, which can be shown by proving that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694. This Court "will not substitute [its] judgment for that of counsel on matters of trial strategy, nor will [this Court] use the benefit of hindsight when assessing counsel's competence." [*Unger*, 278 Mich App at 242-243]. The defendant "bears the burden of demonstrating both deficient performance and prejudice[;] the defendant [also] necessarily bears the burden of establishing the factual predicate for his claim." *Carbin*, 463 Mich at 600. [*Cooper*, 309 Mich App at 80.]

### A. FAILURE TO CALL EXPERT WITNESS

The trial court determined that defense counsel's decision not to call an expert about defendant's alleged posttraumatic stress disorder (PTSD) was an objectively reasonable part of the defense strategy given the circumstances of the murder, the criminal responsibility report from the Forensic Center and other data, defendant's own assertion that he was not insane and that self-

-4-

defense was his best defense, and because introduction of this defense would have resulted in prejudicial evidence toward defendant. Moreover, the trial court determined that had an expert been called, the expert's testimony would not have been credible, and there was no reasonable probability that the result of the proceeding would have changed. We conclude that the trial court's findings of facts are not clearly erroneous, and defendant's constitutional right to effective assistance of counsel was not infringed. *Cooper*, 309 Mich App at 79-80.

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *Payne*, 285 Mich App at 190. "[T]he failure to call a witness can constitute ineffective assistance of counsel only when it 'deprives the defendant of a substantial defense.' " *Id*. (citation omitted). "A trial strategy is not ineffective simply because it ultimately does not succeed." *People v White*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 346901); slip op at 3. "A strategy is also not ineffective because it entails taking calculated risks, especially if the range of available options for the defense is meagre." *Id*.

It was a reasonable matter of strategy for defense counsel to rely on self-defense rather than defendant's alleged PTSD. Defendant testified at trial that he and Watson got into a physical altercation including a baseball bat before defendant ultimately obtained the knife and stabbed Watson in the throat. He did not indicate any history of mental illness during intake in jail. Defense counsel originally requested an evaluation by the Forensic Center to determine defendant's criminal responsibility, which was completed by court order. Dr. Richard Rickman evaluated defendant, and although defendant disclosed a suicide attempt at age 18 and being prescribed antidepressants and medication for attention deficit hyperactivity disorder (ADHD), defendant told Dr. Rickman that he was not insane, and that self-defense was his best trial strategy. Dr. Rickman concluded that defendant did not meet the statutory criteria for insanity at the time of the defense. Defendant did not even assert that he had PTSD until after he was convicted by the jury. Thus, it was reasonable trial strategy for defense counsel to chose not to call an expert witness regarding PTSD. *Payne*, 285 Mich App at 190.

The trial court also determined that if defense counsel called an expert witness, the prosecution would call a rebuttal witness, resulting in the admission of evidence prejudicial to defendant. Dr. Mark S. Kane was retained by defendant to testify at the evidentiary hearing. Although he concluded that defendant suffered from PTSD, he also opined that defendant had schizoid personality issues and a drug problem. Dr. Kane's report included that individuals with schizoid personality have low moral and ethical standards, and are aggressive, amoral, and antisocial. This evidence would have been damaging to the defense. Therefore, the trial court did not clearly err in determining that defense counsel's performance did not fall below an objective standard of reasonableness. *Id*. at 188.

Regarding the second prong of *Strickland*, the trial court determined that even if defense counsel had called Dr. Kane to testify, Dr. Kane's testimony was not credible, and therefore, there was no reasonable probability that the result of defendant's trial would have been different. The trial court noted that Dr. Kane was "straining credibility to paint the [d]efendant in a sympathetic light," was "hyper-technical," "glossed over material facts" of the murder, and his testimony "flies in the face of common sense and the experiences of life." The court therefore rejected Dr. Kane's opinion, and opined that a jury would do the same. The trial court is best suited to make determinations regarding witness credibility, and this Court defers to such determinations. *People*

*v Vaughn*, 186 Mich App 376, 380; 465 NW2d 365 (1990). After reviewing Dr. Kane's testimony at the evidentiary hearing, we cannot conclude that the trial court clearly erred in making this determination. *Payne*, 285 Mich App at 190. Therefore, defendant has failed to establish the prejudice prong of the *Strickland* analysis, and defendant was not denied ineffective assistance of counsel based on defense counsel's failure to call an expert witness to testify at trial. *Strickland*, 466 US at 687-688, 694.

### B. FAILURE TO OBJECT TO PROSECUTORIAL ERRORS

The trial court determined that defense counsel's failure to object to the prosecutorial errors of asking the jury to consider defendant's "moral duty" to retreat as well as eliciting testimony regarding defendant's retrospective assessment of his ability to retreat was objectively reasonable, and nonetheless, had defense counsel objected, there was no reasonable likelihood that the results of the proceeding would have changed.

Decisions regarding the admission of evidence are generally one of trial strategy. See *People v Armstrong*, 490 Mich 281, 290-291; 806 NW2d 676 (2011) (failing to pursue admission of cell phone records was not a matter of sound trial strategy). Defense counsel, Edward Bajoka, testified as to several reasons why he chose not to object at trial. He thought he could address the issues in cross-examination and closing argument, he believed the court would give the proper jury instruction indicating defendant had no duty to retreat, he typically did not object during closing argument so to not cast himself in a bad light for the jurors, and he feared that an objection would highlight the prosecution's arguments. Therefore, the trial court did not clearly err in determining that defense counsel's performance in failing to object was objectively reasonable. *Payne*, 285 Mich App at 188.

Additionally, the trial court properly determined that had defense counsel objected, there was no reasonable probability that the result of the proceeding would have changed. As noted above, the evidence clearly established the elements for first-degree murder, and the trial court delivered the proper jury instruction indicating that defendant had no legal duty to retreat. Therefore, defendant failed to establish that but for trial counsel's failure to object, the outcome of the proceedings would have been different. *Strickland*, 466 US at 694.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray

-6-