# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TEVIN DENZEL SUTTON,

        Defendant-Appellant.

UNPUBLISHED
January 10, 2017

No. 328692
St. Clair Circuit Court
LC No. 15-000116-FC

Before: BOONSTRA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of assault with intent to commit murder, MCL 750.83, assault with intent to do great bodily harm less than murder,[1] MCL 750.84, possession with intent to deliver less than 50 grams of heroin (second offense), MCL 333.7401(2)(a)(iv) and MCL 333.7413(2), third-degree fleeing or eluding a police officer, MCL 257.602a(3), resisting or obstructing a police officer, MCL 750.81d(1), and two counts of felonious assault, MCL 750.82. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 20 to 45 years for the assault with intent to commit murder conviction, 15 to 35 years for the assault with intent to do great bodily harm conviction, 10 to 40 years for the possession with intent to deliver heroin conviction, 2 to 10 years for the third-degree fleeing or eluding conviction, and 5 to 15 years each for the resisting or obstructing and felonious assault convictions. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On December 16, 2014, undercover officers were conducting surveillance on defendant for suspicion of selling narcotics. After Deputy Nicholas Singleton of the St. Clair Sheriff's Department, a member of the undercover team, observed defendant conduct brief meetings with several persons and then drive or walk long distances before returning to the original location, he concluded that defendant was selling narcotics and requested assistance from the Port Huron Police Department in pulling over defendant's car. Officer Ryan Sheedy of the Port Huron

---

[1] Defendant was convicted of this offense as a lesser offense of assault with intent to commit murder.

-1-

Police Department, a uniformed officer, attempted to stop defendant's car in his marked police vehicle. After Sheedy activated his vehicle's overhead lights, defendant did not stop and instead continued to proceed slowly. Officer Matt Finnie of the Port Huron Police Department pulled his undercover van in front of defendant's car in order to force defendant to stop. Singleton drove to the scene to render assistance.

Finnie, who was dressed in plain clothes and wearing a protective vest marked "police," stood at the driver's window of defendant's vehicle and ordered defendant to get out of the car or roll down the window. Sheedy was positioned on the passenger side of defendant's vehicle. Defendant looked back and forth between Finnie and Sheedy. Defendant rolled down the window a few inches, and Finnie stuck his arm through the window to unlock the door. Defendant grabbed Finnie's arm and accelerated his car. Finnie was dragged along with the car, but eventually was able to extract his arm from the car. Singleton had positioned himself approximately 10 feet in front of defendant's car. When defendant accelerated the car forward, Singleton was forced to jump onto the hood to avoid being struck. Singleton and Finnie each fired a single shot into the car, striking defendant, after which defendant stopped accelerating the vehicle.

Defendant testified at trial and acknowledged possessing heroin, but denied attempting to elude the police, when they attempted to stop his vehicle. He stated that he wanted to get off the main road before stopping. Defendant denied knowing that Finnie was a police officer, and claimed that Finnie punched him when he rolled down his window. Defendant denied seeing Singleton in front of his vehicle, and denied putting his car into drive during the police stop. Defendant claimed that seconds after Finnie struck him, he felt an impact on his chest from being shot. Defendant denied that he had intended to kill or harm anyone, and also denied that he attempted to resist when the police were attempting to handcuff him.

The jury found defendant guilty of assault with intent to commit murder regarding Singleton, guilty of assault with intent to do great bodily harm less than murder regarding Finnie, guilty of possession with intent to deliver less than 50 grams of heroin, guilty of third-degree fleeing or eluding a police officer, guilty of two counts of felonious assault, and guilty of resisting or obstructing a police officer. The trial court sentenced defendant as a fourth habitual offender as described above. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

In a brief filed by appointed appellate counsel, defendant argues that the evidence was insufficient to support his convictions of assault with intent to commit murder and assault with intent to do great bodily harm less than murder. In his Standard 4[2] brief, defendant again argues that the evidence was insufficient to support these two assault convictions, and he further

---

[2] A brief filed in propria persona by a criminal defendant pursuant to Supreme Court Administrative Order No. 2004-6.

challenges the sufficiency of the evidence in support of his convictions of felonious assault and resisting or obstructing a police officer. We disagree with regard to all charges.

Due process in a criminal case requires a prosecutor to produce sufficient evidence to warrant the trier of fact in finding that each element of the charged offense was proved beyond a reasonable doubt. *People v Nowak*, 462 Mich 392, 399; 614 NW2d 78 (2000). In reviewing a sufficiency of the evidence question, we view the evidence de novo in a light most favorable to the prosecution to determine whether a rational trier of fact could conclude that the elements of the offense were proven beyond a reasonable doubt. *People v Bulls*, 262 Mich App 618, 623; 687 NW2d 159 (2004). This Court will not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses. *Id.*; *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002). A trier of fact may make reasonable inferences from direct or circumstantial evidence in the record. *People v Vaughn*, 186 Mich App 376, 379-380; 465 NW2d 365 (1990).

The offenses of assault with intent to commit murder, assault with intent to do great bodily harm less than murder, and felonious assault share the common element of an assault. An assault is defined as "either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). A battery is defined as the "intentional, unconsented and harmful or offensive touching of the person of another[.]" *People v Reeves*, 458 Mich 236, 240 n 4; 580 NW2d 433 (1998).

## A. ASSAULT WITH INTENT TO COMMIT MURDER

The elements of assault with intent to commit murder are: (1) an assault; (2) with an actual intent to kill; (3) which, if successful, would make the killing murder.[3] *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005). Assault with intent to commit murder is a specific intent crime. *Id.* at 147.

Defendant was convicted of assault with intent to murder Singleton. Singleton described the incident in which he was forced to leap onto the hood of defendant's accelerating car in order to avoid being run over by the car. Singleton stated that just before defendant's car accelerated toward him, defendant looked directly at him. Singleton was wearing a ballistic vest with the word "sheriff" printed on it. Singleton stated that he jumped onto the car and heard and felt the car continue to accelerate, and he thought he was doing to die. Singleton stated that defendant's car continued to move, but stopped accelerating only after he fired a shot through the windshield, and that he was then able to jump off the hood.

Bystanders who witnessed the accident testified that defendant's car moved forward, and it appeared that defendant was attempting to drive away from the scene. A police detective who

---

[3] This element indicates that the defendant must have intended to kill the victim under circumstances that would not have justified, excused, or mitigated the crime. See *People v Hunter*, 141 Mich App 225, 234; 367 NW2d 70 (1985).

performed a series of tests on defendant's vehicle testified that defendant's car was in park when Officer Finnie approached, but that the car was quickly shifted into drive. The detective stated that his review of the police car video showed that defendant's car made a slight change in direction as it moved forward and struck Finnie's van. It appeared to the detective that defendant was steering the car in a deliberate manner.

Direct and circumstantial evidence supports defendant's conviction of assault with intent to commit murder. Singleton's testimony that defendant looked directly at him before driving the car forward, and that he feared that he would be hit and forced under the car, was sufficient to establish the element of assault. *Starks*, 473 Mich at 234. The evidence supported the inference that defendant drove the car in a deliberate manner when it accelerated forward and struck Finnie's van.[4] The testimony that the car changed directions supported an inference that defendant intended to strike Singleton with the car, and intended to kill Singleton by pinning him between the car and the van. Such a killing would have been murder because no evidence showed that the killing would have been justified, excused, or mitigated. Accordingly, the evidence was sufficient to establish the elements of assault with intent to commit murder. *Brown*, 267 Mich App at 147-148.

## B. ASSAULT WITH INTENT TO DO GREAT BODILY HARM LESS THAN MURDER

The elements of assault with intent to do great bodily harm less than murder are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997). Assault with intent to do great bodily harm less than murder is a specific intent crime. *Brown*, 267 Mich App at 149. The intent to do great bodily harm less than murder has been defined as "an intent to do serious injury of an aggravated nature." *People v Mitchell*, 149 Mich App 36, 39; 385 NW2d 717 (1986).

Defendant was convicted of assault with intent to do great bodily harm to Finnie. Finnie testified that defendant rolled down the driver's window, and that he (Finnie) reached inside to attempt to unlock the door. However, defendant knocked his hand away and grabbed his arm. Finnie stated that defendant deliberately drove the car forward while holding onto Finnie's arm, and that he feared that he would be dragged along and seriously injured or killed. Finnie stated that he yanked his arm back a second time and was able to free himself. The testimony from Finnie, Singleton, and the bystanders supported a finding that defendant acted intentionally when he drove the car forward. Further, the testimony that defendant held onto Finnie's arm as defendant accelerated his vehicle, thereby dragging Finnie alongside the moving vehicle, supported an inference that defendant intended to cause Finnie great bodily harm. *Parcha*, 227 Mich App at 239.

---

[4] Singleton had jumped off the car before it hit the van.

## C. FELONIOUS ASSAULT

The elements of felonious assault are: (1) an assault; (2) with a dangerous weapon; and (3) with the intent to place the victim in reasonable apprehension of an immediate battery. *People v Davis*, 216 Mich App 47, 53; 549 NW2d 1 (1996). A dangerous weapon can be "an instrumentality which, although not designed to be a dangerous weapon, is used as a weapon and, when so employed, is dangerous." *People v Barkley*, 151 Mich App 234, 238; 390 NW2d 705 (1986). Felonious assault is a specific intent crime. *People v Davis*, 126 Mich App 66, 69; 337 NW2d 315 (1983).

Defendant was convicted of felonious assault with respect to Officers Finnie and Singleton. Finnie's testimony that defendant grabbed his arm, and deliberately drove the car forward while holding onto his arm, established the elements of an assault and a dangerous weapon, i.e., the car. A car is not designed to be a dangerous weapon, but it can qualify as such when used in an attempt to drag a person. See *Barkley*, 151 Mich App at 238. Further, the testimony from Finnie, Singleton, and the bystanders supported a finding that defendant acted intentionally when he drove the car forward. *Vaughn*, 186 Mich App at 379-380.

Singleton testified that he was standing approximately 10 feet in front of defendant's car when defendant looked directly at him and then accelerated his car toward him. Singleton testified that he jumped onto the hood of the car to avoid being struck by the car. Singleton's testimony established the elements of felonious assault. Moreover, the jury was entitled to infer from Singleton's testimony (that defendant looked directly at him before accelerating) that defendant acted with the specific intent to commit an assault when he accelerated his vehicle toward Singleton. *Vaughn*, 186 Mich App at 379-380.

Accordingly, defendant's convictions of felonious assault with respect to Finnie and Singleton are supported by sufficient evidence. *Davis*, 216 Mich App at 53.

## D. RESISTING OR OBSTRUCTING A POLICE OFFICER

MCL 750.81d(1) provides:

> Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

The elements of resisting and obstructing a police officer are: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010); MCL 750.81d(1). The term "obstruct" is defined as "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a).

Defendant argues that the phrase "knows or has reason to know" in MCL 750.81d(1) is unconstitutionally vague because it allows the factfinder unfettered discretion in determining whether an offense was committed. In addition, defendant contends that no evidence showed that he resisted arrest knowing that the men surrounding him were police officers. We reject these arguments.

Officer Sheedy testified that once defendant got out of the car and was lying on his stomach on the ground, he held his arms stiffly underneath him, and resisted the officers' attempts and commands to move his hands behind his back so that he could be handcuffed. Deputy Singleton and Officer Finnie gave similar testimony. The jury was entitled to accept this testimony as credible and to conclude that this testimony supported a finding that defendant knowingly obstructed the officers' attempts to handcuff him. *Milstead*, 250 Mich App at 404; MCL 750.81d(7)(a).

Furthermore, there is no merit to defendant's argument that MCL 750.81d(1) is unconstitutionally vague because the phrase "knows or has reason to know" in MCL 750.81d(1) gives the factfinder unfettered discretion to determine whether an offense occurred. A statute is presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent. *People v Deroche*, 299 Mich App 301, 305; 829 NW2d 891 (2013). MCL 750.81d(1) clearly states that a statutory violation will be found only if the trier of fact finds that the accused resisted or obstructed a person who the accused "knows or has reason to know" is an officer performing his or her duties. This phrase thus actually narrows the application of MCL 750.81d(1) and curtails the factfinder's discretion in determining whether this offense was committed. See *People v Perez-DeLeon*, 224 Mich App 43, 50; 568 NW2d 324 (1997) (holding that a statutory requirement of actual or constructive notice was not unconstitutionally vague). This element, like the other elements of an offense, may be supported by direct or circumstantial evidence. The evidence showed that Sheedy was driving a marked police car when he attempted to stop defendant's car, and that Finnie and Singleton wore protective vests bearing the words "police" and "sheriff," respectively. This evidence was sufficient to allow the jury to infer that defendant had reason to know that the persons whom he was resisting were officers performing their official duties.

### III. REMAINING ISSUES IN DEFENDANT'S STANDARD 4 BRIEF

### A. ADMISSIBILITY OF DEFENDANT'S STATEMENTS

Defendant argues that his statements to the police should have been suppressed because they were not freely and voluntarily made. Because defendant failed to challenge the admissibility of any statement in the trial court, this issue is unpreserved. Therefore, our review is limited to plain error affecting defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Both the United States and the Michigan Constitutions guarantee the right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17. The right protects a person from being compelled to testify against himself or to make an incriminating statement. *People v White*, 493 Mich 187, 193-194; 828 NW2d 329 (2013). A statement made by an accused during a custodial interrogation is inadmissible unless the accused knowingly, voluntarily, and intelligently waived

his Fifth Amendment rights. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Although defendant argues that he made statements that were coerced because he was held in a cold jail cell for an extended period of time and was not allowed anything to eat or given any pain medication for his gunshot wounds, the record does not contain any substantive reference to a statement made by defendant that was offered at trial. In addition, the parties did not refer to any statement made by defendant in either opening statement or closing argument, and the trial court did not instruct the jury on the proper way to evaluate any statement made by defendant. Further, although defendant testified and acknowledged that he spoke to Officer Reece at the jail, he made no mention of the conditions under which he gave any statement and did not assert that any statement was coerced.

An appellant must argue the merits of an issue, *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012), and must support factual statements with specific references to the record. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). Defendant has not done so. He asserts that he made a statement and contends that the statement was coerced, but provides no context or factual support for his argument. Because defendant has not identified any record support for his argument regarding either the admission of a statement or the circumstances under which any statement was made, and because the record does not reveal that any statement of defendant's was admitted or referenced at trial, he has not met his burden of demonstrating a plain error affecting his substantial rights. See *Carines*, 460 Mich at 763-764.

## B. HABITUAL-OFFENDER ENHANCEMENT

Next, defendant argues that he was erroneously sentenced as a habitual offender because the prosecution did not timely file the notice of intent to seek an enhanced sentence. He also argues that, even if the habitual-offender notice was timely filed, he was improperly sentenced as a fourth-offense habitual offender because he had prior felony convictions arising from only two prior criminal incidents. We disagree with both arguments.

Preliminarily, we note that defendant did not challenge the timeliness of the habitual offender notice or his status as a fourth-offense habitual offender in the trial court. Therefore, both of these issues are unpreserved, and our review is limited to plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 763-764. This Court reviews de novo an issue of statutory interpretation. See *People v Buehler*, 477 Mich 18, 23; 727 NW2d 127 (2007).

A prosecutor seeking an enhanced sentence must file notice of that intent within 21 days of the defendant's arraignment or, if the arraignment is waived, within 21 days of the filing of the underlying charge or charges. MCL 769.13(1); MCR 6.112(F). Defendant argues that the prosecutor failed to timely file the notice of intent to seek an enhanced sentence because he was arraigned on December 16, 2014, and the prosecutor did not file the notice of intent until January 22, 2015, outside the 21-day period. The record does not support defendant's argument. Although the incident from which the charges arose took place on December 16, 2014, the record discloses that defendant was not arraigned until December 26, 2014, presumably because he was hospitalized for treatment of the gunshot wounds he sustained on December 16, 2014.

Defendant's preliminary examination took place on January 13, 2015, and the district court noted that defendant had been charged as a fourth-offense habitual offender. Thus, the record discloses that the notice of intent was timely filed within the requisite 21-day period.

Defendant also argues that the trial court erred by sentencing him as a fourth-offense habitual offender. Defendant acknowledges that he was convicted of bank robbery in 2010, and was convicted of delivery or manufacture of less than 50 grams of heroin and maintaining a drug house in 2013. He argues, however, that he could not be sentenced as a fourth-offense habitual offender because the prior convictions arose out of only two prior criminal incidents. We disagree.

MCL 769.12(1) authorizes enhanced punishment "[i]f a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, . . . and that person commits a subsequent felony[.]" In *People v Gardner*, 482 Mich 41; 753 NW2d 78 (2008), our Supreme Court overruled prior cases, including *People v Stoudemire*, 429 Mich 262; 414 NW2d 693 (1987), and *People v Preuss*, 436 Mich 714; 461 NW2d 703 (1990), which had held that multiple felonies arising from the same incident could count as only a single felony for purposes of sentence enhancement. The *Gardner* Court considered MCL 769.11, the third-habitual offender statute, and concluded that the plain language of the statute did not require that the prior felony convictions must have resulted from separate criminal incidents. *Gardner*, 482 Mich at 68. The only material difference between the language of MCL 769.11(1) and the language of MCL 769.12(1) is that the former applies where the defendant "has been convicted of any combination of 2 or more felonies," whereas the latter applies where the defendant "been convicted of any combination of 3 or more felonies." Accordingly, the rationale of *Gardner* applies equally to MCL 769.12. Therefore, because defendant had three prior felony convictions, the trial court did not err by sentencing him as a fourth-offense habitual offender.

## C. DOUBLE JEOPARDY

Next, defendant argues that the double jeopardy protection against multiple punishments for the same offense prohibit his multiple convictions of assault with intent to commit murder and felonious assault with respect to Singleton, and his multiple convictions of assault with intent to do great bodily harm less than murder and felonious assault with respect to Finnie. Because defendant did not challenge his convictions on double jeopardy grounds in the trial court, this issue is not preserved. Accordingly, our review of this issue is limited to plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 763-764; *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008).

The United States and Michigan Constitutions prohibit placing a defendant in jeopardy twice for the same offense. US Const, Am V; Const 1963, art 1, §15. The prohibition against double jeopardy protects against: (1) a second prosecution for the same offense after a defendant has been acquitted of that offense; (2) a second prosecution for the same offense after a defendant has been convicted of that offense; and (3) multiple punishments for the same offense. *Nutt*, 469 Mich at 574. The protection against multiple punishments for the same offense is not violated if the Legislature has clearly expressed the intent to authorize cumulative punishments under two statutes. *People v Miller*, 498 Mich 13, 18; 869 NW2d 204 (2015). If the Legislature has not clearly expressed an intent, then Michigan courts must apply the "abstract legal

elements" test set out in *People v Ream*, 481 Mich 223, 225-226; 750 NW2d 536 (2008). Under this test, two offenses are considered to be the same only if it is "impossible to commit the greater offense without also committing the lesser offense." *Miller*, 498 Mich at 19.

Defendant argues that the offenses of assault with intent to commit murder and felonious assault, and assault with intent to do great bodily harm less than murder and felonious assault must be considered the same offense because the charges resulted from a continuous sequence of events. Defendant's argument is without merit because it seeks to apply an incorrect test. The language of the statutes prohibiting assault with intent to commit murder and felonious assault do not reveal any legislative intent regarding multiple punishments. Similarly, the language of the statutes prohibiting assault with intent to do great bodily harm less than murder and felonious assault do not reveal any legislative intent regarding multiple punishments. Therefore, we must determine whether felonious assault contains an element that is not present in either assault with intent to commit murder and assault with intent to do great bodily harm less than murder, or vice versa. *Miller*, 498 Mich at 19.

Felonious assault contains an element, i.e., the use of a dangerous weapon, MCL 750.82, that is not present in either assault with intent to commit murder or assault with intent to do great bodily harm less than murder. Simply put, a dangerous weapon is not required to commit an assault with intent to commit murder, MCL 750.83, or an assault with intent to do great bodily harm less than murder, MCL 750.84. Further, both MCL 750.83 and MCL 750.84 both contain intent requirements not present in MCL 750.82. Thus, for purposes of double jeopardy, assault with intent to commit murder and felonious assault are not the same offense, and assault with intent to do great bodily harm less than murder and felonious assault are not the same offense. *Miller*, 498 Mich at 19; see also *People v Strawther*, 480 Mich 900, 739 NW2d 82 (2007) (reversing this Court and stating that MCL 750.84 and MCL 750.82 have different elements and "the defendant may be punished for each."). Accordingly, defendant's convictions do not violate the prohibition against double jeopardy.

## D. PROSECUTOR'S CONDUCT

Next, defendant argues that the prosecutor erred[5] by making improper remarks, using false testimony, and denigrating defense counsel. Because defendant did not object to the prosecutor's conduct at trial, this issue is unpreserved. Therefore, our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

---

[5] Defendant refers to these alleged errors as "prosecutorial misconduct." This Court held in *People v Cooper*, 309 Mich App 74, 87–88; 867 NW2d 452 (2015), that the term "prosecutorial error" is preferred over the more commonly used phrase of "prosecutorial misconduct," which should be reserved for only the most extreme cases when a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct. See also *People v Bosca*, 310 Mich App 1, 25–26; 871 NW2d 307 (2015) (applying the *Cooper* distinction). Accordingly, we will adopt this same convention.

The test of prosecutorial error is whether the defendant was denied a fair and impartial trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). Prosecutorial error issues are decided on a case-by-case basis. The reviewing court must examine the pertinent portion of the record, and evaluate a prosecutor's remarks in context. *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *People v Schutte*, 240 Mich App 713, 721; 613 NW2d 370 (2000).

Defendant cites general principles for review of an allegation of prosecutorial error, and sets out 21 statements by the prosecutor that he asserts were improper. However, he does not specify why the statements were improper or how the statements prejudiced him. An appellant must argue the merits of an issue, *King*, 297 Mich App at 474, and must support factual statements with specific references to the record. *Petri*, 279 Mich App at 413. Defendant provides record citations for the statements to which he objects, but provides no context for his argument that the statements were improper. A party cannot simply announce a position and then leave it to this Court to discover and rationalize the basis for his claims. *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009). Because these claims are unpreserved, and because defendant has not supported his argument that the prosecutor committed error by making the identified statements, he has not met his burden of demonstrating a plain error affecting his substantial rights.

E. MOTION TO SUPPRESS EVIDENCE

Finally, defendant argues that the trial court erred by denying the motion to suppress the heroin found in his car on the ground that the traffic stop was illegal. He contends that the surveillance officers did not observe him engage in a hand-to-hand drug transaction with any other person, and thus did not have an articulable and reasonable suspicion that he was violating the law. We disagree.

"This Court will not reverse a trial court's findings regarding a motion to suppress evidence as illegally seized unless they are clearly erroneous." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012). We review de novo a question of law as to whether the search "was supported by the constitutional standard of reasonable suspicion." *Id.*

In *Dillon*, 296 Mich App at 508-509, this Court set out the applicable law regarding evidence seized as a result of a traffic stop:

> The right against unreasonable searches and seizures is guaranteed by both the United States and Michigan Constitutions. US Const, Am IV; Const 1963, art 1, § 11; *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). Generally, if evidence is unconstitutionally seized, it must be excluded from trial. *People v Goldston*, 470 Mich 523, 528; 682 NW2d 479 (2004); *Terry v Ohio*, 392 US 1, 12-13; 88 S Ct 1868; 20 L Ed 2d 889 (1968). But a police officer may stop and detain a motor vehicle on the basis of an articulable and reasonable suspicion that the vehicle or one of its occupants is violating the law, including a law regulating equipment. *People v Matthew Williams*, 236 Mich App 610, 612; 601 NW2d 138 (1999). This Court's determination of whether there was reasonable

suspicion to justify a stop must be made on a case-by-case basis, evaluated under the totality of the circumstances, and based on common sense. *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). The subjective intent of the police officer is irrelevant to the validity of the stop. *People v John Williams*, 472 Mich 308, 314 n 7; 696 NW2d 636 (2005).

A court is required to suppress evidence otherwise lawfully seized during a traffic stop only if the officer did not have reasonable suspicion to justify the stop. See *People v Davis*, 250 Mich App 357, 363-364; 649 NW2d 94 (2002); *Williams*, 236 Mich App at 612.

The trial court correctly found that the stop of defendant's car was based on an articulable and reasonable suspicion that defendant was engaged in criminal activity. The trial court noted that Singleton had worked with the Drug Task Force for more than 2-1/2 years, that prior to the stop of defendant's car he had been investigating defendant for the sale of heroin, and that he had conducted a controlled buy from defendant within 72 hours of the stop. Singleton surveilled defendant on December 16, 2014, and saw defendant meeting with various persons for short periods of time, driving or walking long distances after doing so, and traveling to an area known for narcotics activity.

Singleton relied on his training and experience as a narcotics officer, including similar behavior he had observed from other persons who were engaged in narcotics trafficking, the controlled buys he made from defendant, and his observations on December 16, 2014, to form a reasonable suspicion that defendant was selling narcotics. Singleton was entitled to make reasonable inferences regarding defendant's behavior based on his experience. *People v Jones*, 260 Mich App 424, 429; 678 NW2d 627 (2004). The trial court did not clearly err in its findings of fact, or in ruling that the search was supported by the requisite constitutional standard. *Dillon*, 296 Mich App at 508.

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly