*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JACOB DYLAN PLANK,

      Defendant-Appellant.

UNPUBLISHED
December 12, 2019

Nos. 344298; 348869
Mecosta Circuit Court
LC No. 17-008958-FH

Before: METER, P.J., and O'BRIEN and TUKEL, JJ.

PER CURIAM.

A jury convicted defendant of larceny in a building, MCL 750.360, and the trial court sentenced defendant to probation and a jail term. In Docket No. 344298, defendant raises several challenges to this conviction. While on probation for that crime, defendant committed another larceny in a building in Kent County, where he was convicted and sentenced to jail. After completing that sentence, defendant appeared before the trial court again because the Kent County larceny was a probation violation. After defendant admitted to this probation violation, the trial court sentenced him to 32 months' to 4 years' imprisonment. In Docket No. 348869, defendant appeals that sentence. We affirm in both appeals.

## I. DOCKET NO. 344298

### A. FACTS

Before reviewing the details that led to defendant's conviction, a timeline for relevant events is helpful. The larceny in a building for which defendant was convicted in Docket No. 344298 occurred on November 1, 2016, and the victim was SS. At some other point in 2016, defendant committed larceny in a building involving a different victim, JU. Defendant was convicted of the larceny in a building involving JU in April 2017. Defendant was tried and convicted of the larceny in a building against SS in February 2018.

With this timeline in hand, we turn to the details of defendant's conviction. Defendant's conviction arose from the theft of money and a cellular telephone from SS, whom he met through an online dating service. In the early morning hours of November 1, 2016, the two went

-1-

to SS's apartment, lounged on her bed, and had sex. Afterwards, defendant got fully dressed—even putting on his shoes—and went into the living room. SS thought this unusual because defendant had told her that he did not want to leave. SS sat on her couch with defendant, with her cellular telephone next to her.

SS eventually went into the kitchen to look for something to eat. After not finding anything, she exited the kitchen and ran into defendant in the hallway. He said that he had beef jerky in his car and would go get it. Defendant was blocking SS's access to the living room, and she felt as if he were "trying to stall." Defendant left the apartment, and SS lay on her bed for five or ten minutes. It then occurred to her that defendant had departed; she looked outside and saw that his truck was gone. She subsequently noticed that her cellular telephone was missing. Also missing was approximately $60 from her purse, which had been next to her telephone on the couch. SS attempted to contact her telephone and also attempted to contact defendant through his telephone and through Facebook, but she was not successful.

## B. OTHER-ACTS EVIDENCE

During trial, the prosecution presented evidence of defendant's larceny in a building against JU as other acts evidence. JU knew defendant from high school. They lost contact but reconnected in 2016. JU ran into defendant as JU was leaving work, and defendant asked to come to JU's home. JU agreed. After socializing for some time, defendant asked to spend the night. JU again agreed. The two slept on separate couches in the living room. During the night, JU woke up and saw that defendant was no longer on his couch. JU searched the residence and found defendant in the basement. JU testified, "[I]t appeared that he was trying to take some things of mine." Defendant told JU that he was looking for the bathroom, which JU did not believe because defendant had used the bathroom—which was upstairs—multiple times during the night. JU escorted defendant from his house, and later discovered that some cash, pills, and his checkbook were missing. JU's bank notified him that his account balance was negative; three fraudulent checks had been written and were dated "the same day that . . .[defendant] was over." The parties stipulated that, in April 2017, defendant was convicted for larceny in a building in connection to the facts testified to by JU.

Defendant argues that the trial court erred by allowing this evidence at trial. This Court reviews for an abuse of discretion a trial court's decision to admit evidence. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017).

MRE 404(b) states:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

(2) The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

The parties agree that the prosecution missed MRE 404(b)(2)'s 14-day notice deadline by three days. Defendant contends that the court erred by excusing this delay. We disagree.

In *People v Jackson*, 498 Mich 246, 261-262; 869 NW2d 253 (2015), the Court stated that the purposes of the notice requirement are to promote reliable decision-making, to prevent unfair surprise, and to give the defense a chance to develop arguments about relevancy and prejudice. In *People v Felton*, 326 Mich App 412, 422-424; 928 NW2d 307 (2018), this Court held that, even though the prosecution missed the deadline by only two days, the prosecution had not shown good cause for why it failed to meet the 14-day notice requirement in MRE 404(b)(2) to present other acts evidence. The *Felton* Court stated that one of the prosecution's excuses for the two-day delay—that it had had difficulties in reaching the witness that it would use to present the other acts evidence—was not sufficient to show good cause. *Id*. at 418, 422. It concluded that the prosecution expended insufficient efforts to obtain the witness's contact information and that, regardless, such information was not a prerequisite to filing the pretrial notice. *Id*. at 422-423. The *Felton* Court also stated that it was "undisputed that the prosecution was aware of [the] defendant's conviction for [the other crime] at the time the information was filed," and it concluded that the prosecution's delay of six months without trying to obtain the police report evidenced insufficient effort to obtain the report in a timely manner. *Id*. at 422. It further noted that the defendant's "counsel was not aware of the other-acts testimony to be offered . . . until 12 days before trial" when it received the prosecution's notice. *Id*. at 421.

Here, the felony information was filed on January 25, 2017. The other conviction in question occurred in April 2017. This provides a distinguishing feature from *Felton*—unlike in *Felton*, there was no prior conviction that the prosecution could have been aware of when it filed the information. Defendant argues that the prosecution was aware of the Kent County charges and proceedings before the filing of the information, but it was not unreasonable for the prosecution to decide that it would seek to introduce evidence of the other act only after a *conviction*.

Also, it is undisputed that fruitful settlement negotiations were ongoing at least until November 13, 2017. Defendant contends that after this date, the prosecution needed to act more diligently to obtain the information needed in order to provide the 14-day notice ahead of the trial. It is not clear from the record, however, that all settlement negotiations were over by the November 13 date. But even if that is when settlement negotiations broke down, the prosecution stated at the hearing on the other-acts evidence that when settlement "discussions broke down our office requested the police reports . . . and, as well, received those reports on January 31st, 2018." The reports are in the record and reflect a "received" date of January 31, 2018. Yet there is no evidence of when the records were in fact requested. Even so, based on the information

-3-

presented during the arguments about the MRE 404(b) evidence, the trial court had reason to believe that the prosecution acted diligently after the breakdown of plea negotiations. Unlike in *Felton*, there was no six-month period without reasonable efforts.

Moreover, it is not disputed that defense counsel represented defendant during the proceedings involving JU, so counsel would have been familiar with the facts of the other case—making the "loss" of three days' notice (i.e., the receipt of 11 days' notice instead of 14 days' notice) relatively insignificant. This is in stark contrast to the situation in *Felton*, wherein the defense had not been given time to familiarize itself with facts from a police report pertaining to the other act. *Id*. at 424. We find that the present case is distinguishable from *Felton* and that the trial court did not abuse its discretion by finding good cause to excuse MRE 404(b)(2)'s notice requirement.[1]

Defendant also contends that the other-acts evidence was substantively inadmissible. The Supreme Court has set forth the following standards for admission of other-acts evidence under MRE 404(b):

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402[2] as enforced through Rule 104(b);[3] third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v Denson*, 500 Mich at 398 (quotation marks and citation omitted).]

The list of purposes in MRE 404(b)(1) is not exhaustive. *People v Starr*, 457 Mich 490, 496; 577 NW2d 673 (1998). The rule "permits the admission of evidence on any ground that does not risk impermissible inferences of character to conduct." *Id*. One such ground is to show "a plan, scheme, or system" based on acts containing common features. See *People v Hine*, 467 Mich

---

[1] Defendant states in his brief on appeal that the three-day delay in providing notice "deprived [him] the opportunity to contact potential witnesses." Defendant does not elaborate on what witnesses he was deprived the opportunity of calling, nor does he explain why he would have had an opportunity to contact potential witnesses if given 14 days but had no such opportunity when given 11 days. "[D]efendant bears the burden of providing this Court with a record to verify the factual basis of any argument upon which reversal [might be] predicated." *People v Everett*, 318 Mich App 511, 523; 899 NW2d 94, 103 (2017) (quotation marks and citation omitted; alteration in *Everett*). Because defendant failed to provide additional information as to how the 11-day—rather than a 14-day—notice deprived him of the opportunity to contact potential witnesses, this Court cannot verify the factual basis of his argument for reversal.

[2] MRE 402 provides, in pertinent part, that "[a]ll relevant evidence is admissible" and that "[e]vidence which is not relevant is not admissible."

[3] MRE 104(b) states: "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

242, 253; 650 NW2d 659 (2002). However, general similarity between acts is not sufficient to allow for admission. *People v Knox*, 469 Mich 502, 510; 674 NW2d 366 (2004); *People v Sabin (After Remand)*, 463 Mich 43, 64; 614 NW2d 888 (2000). In *Sabin (After Remand)*, the Court stated:

> In this case, we conclude that the trial court did not abuse its discretion in determining that defendant's alleged assault of the complainant and alleged abuse of his stepdaughter shared sufficient common features to infer a plan, scheme, or system to do the acts. The charged and uncharged acts contained common features beyond mere commission of acts of sexual abuse. Defendant and the alleged victims had a father-daughter relationship. The victims were of similar age at the time of the abuse. Defendant allegedly played on his daughters' fear of breaking up the family to silence them. One could infer from these common features that defendant had a system that involved taking advantage of the parent-child relationship, particularly his control over his daughters, to perpetrate abuse. [*Id*. at 66.]

The Court added:

> This case . . . is one in which reasonable persons could disagree on whether the charged and uncharged acts contained sufficient common features to infer the existence of a common system used by defendant in committing the acts. As we have often observed, the trial court's decision on a close evidentiary question such as this one ordinarily cannot be an abuse of discretion. We therefore conclude that the trial court did not abuse its discretion in determining, under the circumstances of this case, that the evidence was admissible under this theory of logical relevance. [*Id*. at 67-68 (citations omitted).]

The present case is analogous to *Sabin*. As noted by the prosecution, in both the current incident and the incident involving JU, defendant exploited a close relationship (a sexual relationship with SS, a friendship relationship with JU) to gain entry to a home; stayed until late in the night; lied when confronted; and took small, concealable items of value. One could readily infer that defendant had a system of exploiting relationships in this manner. Thus, even if it was a close evidentiary question, the trial court's decision to admit the other acts as evidence of a system, plan, or scheme was not an abuse of discretion.

Defendant contends that the evidence should have been excluded under the balancing test of MRE 403. That rule states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. [MRE 403.]

Evidence is "probative" if it makes the existence of a consequential fact more probable than it would be without the evidence. *People v Feezel*, 486 Mich 184, 197; 783 NW2d 67 (2010); see also MRE 401. MRE 403 does not prohibit prejudicial evidence; only evidence that is *unfairly*

prejudicial. *Feezel*, 486 Mich at 198. This unfairness arises if there is a danger that marginally probative evidence will be given undue weight by the jury. *Id*.

Defense counsel argued in his opening statement that SS was not credible, and he implied that she was upset because defendant did not say goodbye to her but instead just left her home abruptly. He said that because of this failure on defendant's part, SS "has a reason to lie and pin something on my client." The authorities never recovered the stolen telephone or cash, and the case rested on SS's testimony. The MRE 404(b) evidence was therefore an important piece of the prosecution's case and it held significant probative value. In addition, the court gave a cautionary instruction. This served to lessen any prejudicial impact. *People v Katt*, 248 Mich App 282, 308; 639 NW2d 815 (2001), aff'd 468 Mich 272 (2003). Moreover, this Court has stated that "[w]hether other-acts evidence is more prejudicial than probative is best left to the contemporaneous assessment of the trial court." *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005). And again, even if one could argue that the issue is close, "[a] trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. Under all the circumstances, the trial court's decision with regard to the MRE 403 balancing test was within the range of reasonable and principled outcomes. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

Defendant takes issue with the fact that the prosecutor introduced evidence not only of the underlying circumstances of the other incident, but also of defendant's conviction resulting from the incident. But MRE 404(b)(1) specifically refers to evidence of "other crimes[.]" See also generally *People v Crawford*, 458 Mich 376; 582 NW2d 785 (1998), abrogation on other grounds recognized by *People v Knox*, 256 Mich App 175, 189; 662 NW2d 482 (2003), rev'd 469 Mich 502 (2004).[4] No error is apparent.

## C. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the prosecution presented insufficient evidence to support his conviction. We review "de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). We "review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *Id*. Direct and circumstantial evidence can be considered in assessing sufficiency-of-the-evidence claims. See *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

MCL 750.360 states, "Any person who shall commit the crime of larceny by stealing in any dwelling house, house trailer, office, store, gasoline service station, shop, warehouse, mill, factory, hotel, school, barn, granary, ship, boat, vessel, church, house of worship, locker room or any building used by the public shall be guilty of a felony." For a conviction under this statute,

---

[4] The entire analysis in *Crawford* was focused on the admission of a prior *conviction*; the Court ultimately concluded that the prosecution failed to establish a proper purpose for its introduction. *Crawford*, 458 Mich at 400.

there must be an unlawful taking and carrying away of the personal property or money of another, with the intent to steal the property. See *People v March*, 499 Mich 389, 400-401; 886 NW2d 396 (2016), and MCL 750.356. In addition, the taking must have occurred within the confines of a building. *March*, 499 Mich at 401.

The elements of larceny in a building were amply supported by the testimony of SS, who stated that defendant told her that he was going to get beef jerky from his car but then departed from her apartment complex, after which some of her money and her telephone were missing. As noted in *Hardiman*, 466 Mich at 428, "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id*. Defendant emphasizes that no motive for the alleged theft was presented, but he concedes that motive is not an element of the offense. In addition, it is easy to infer that the motive was financial gain. He also contends that SS "offered no proof" that she had had $60 in her wallet, but SS's testimony *was* the proof. He also states that "[s]he did not explain why additional cash was left in her wallet after the alleged $60.00 went missing." SS testified that there were "a couple dollars left" in her purse after the theft. That the perpetrator left "a couple dollars" does not negate the evidence of theft and is not particularly surprising given that he would have likely been acting quickly to avoid detection. Finally, defendant attacks SS's credibility in general, but her credibility was "a matter for the trier of fact to ascertain." *People v Vaughn*, 186 Mich App 376, 380; 465 NW2d 365 (1990). Defendant's sufficiency argument offers no basis for reversal.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that his trial attorney rendered ineffective assistance in several respects. Because defendant failed to file a motion in the trial court for a new trial or an evidentiary hearing, his ineffective assistance claim is unpreserved. See *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). This Court reviews unpreserved claims of ineffective assistance based on the facts contained in the existing record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

To demonstrate ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Effective assistance is "strongly presumed," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), and the defendant bears the heavy burden of proving otherwise, *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004).

Defendant first contends that defense counsel at trial was ineffective for not moving for a directed verdict. As discussed in part I.C of this opinion, the prosecution presented sufficient evidence for a rational trier of fact to conclude that the elements of the crime had been established beyond a reasonable doubt. Accordingly, a motion for a directed verdict would have been futile. See *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001) (discussing the standard for reviewing a directed-verdict motion). Defense counsel was not ineffective for failing to raise a futile motion. *People v Buie*, 298 Mich App 50, 66; 825 NW2d 361 (2012).

Defendant also contends that counsel should not have stipulated that if defendant testified, evidence of his 2017 conviction of larceny in a building would be admissible for impeachment purposes under MRE 609. Defendant contends that counsel should not have made this stipulation but instead should have argued that the court needed to conduct the analysis for admission of theft crimes as set forth in MRE 609(a)(2)(B).[5] The problem with defendant's appellate argument, however, is that he did *not* testify and therefore the evidence of the 2017 conviction was never admitted for impeachment purposes under MRE 609.[6] In an apparent attempt to establish prejudice, defendant speculates about whether the stipulation by defense counsel is what led to defendant's failure to testify. He states, "No record was made reflecting whether [defendant] knowing [sic] exercised his right to remain silent, or if he wished to testify, or if he was exercising his right to remain silent because his prior conviction would be used on cross-examination." These statements fall far short of *establishing* that counsel's stipulation led to defendant's failure to testify. See *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015) (noting that the defendant bears the burden of demonstrating the factual predicate for a claim of ineffective assistance of counsel).

Relatedly, defendant contends that counsel failed to "discuss with him the aspects of testifying or exercising his right to remain silent at trial." Again, defendant does not provide any factual support for this assertion, so it is not a basis for finding ineffective assistance of counsel. *Id*. To the extent that defendant may be attempting to argue that discussions should have been placed on the record, we note that "[t]here is no requirement in Michigan that there be an on-the-record waiver of a defendant's right to testify." *People v Harris*, 190 Mich App 652, 661; 476 NW2d 767 (1991).

Defendant lastly takes issue with the fact that counsel stipulated to the admission of evidence of the conviction during the prosecution's case, in connection with the MRE 404(b) evidence. As discussed in part I.B of this opinion, however, the evidence of the conviction was admissible under MRE 404(b). And at the time of counsel's stipulation, the trial court had already ruled favorably for the prosecution with regard to the MRE 404(b) evidence. Accordingly, it was not below an objective standard of reasonableness for counsel to stipulate to the admission of the conviction evidence. It is possible—and entirely reasonable—that counsel felt that an oral stipulation was preferable to having the jury view a certified, written copy of a conviction.[7] See *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012) (explaining that this Court must "affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did") (quotation marks and citation omitted).

---

[5] This requires a consideration, in part, of whether "the evidence has significant probative value on the issue of credibility[.]" MRE 609(a)(2)(B).

[6] It was, as discussed in part I.B of this opinion, admitted in relation to MRE 404(b).

[7] Defendant complains that counsel elicited from JU that defendant was convicted. The evidence of conviction was already in the record, so defendant cannot demonstrate that this elicitation affected the outcome of the proceedings. *Trakhtenberg*, 493 Mich at 51.

In sum, defendant has not established any entitlement to appellate relief in connection with his claims of ineffective assistance of counsel.

## II. DOCKET NO. 348869

In Docket No. 348869, defendant only challenges the sentence that resulted from his second probation violation. The events that led to that sentence are a tangled web of larcenies and probation violations. As relevant to his sentence, defendant, as previously discussed, committed a larceny in a building involving SS in 2016. Defendant was tried and convicted of that larceny in February 2018. On April 2, 2018, defendant was sentenced to jail and probation. Defendant was released on probation on April 21, 2018. Two days later, on April 23, 2018, defendant failed to report to his probation officer in violation of his probation. On May 14, 2018, defendant appeared before the trial court to be sentenced for this probation violation. Defendant was again sentenced to jail and probation. On May 26, 2018, defendant was released from jail and placed back on probation. But defendant again failed to report to his probation officer. Then, on May 31, 2018, defendant committed a larceny in a building in Kent County.[8] Defendant was convicted of that crime on August 14, 2018, served jail time, and was released on April 1, 2019. The next day, on April 2, 2019, defendant was arraigned for his second probation violation in this case. On April 15, 2019, defendant admitted to a second probation violation, and the trial court sentenced him to 32 months' to four years' imprisonment.

This sentence departed from the guidelines by 15 months. Defendant argues that the sentence was an unreasonable and disproportionate upward departure. We disagree.

A sentence departing from the guidelines range is reviewed by this Court for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). The relevant question for appellate courts reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). The principle of proportionality requires that sentences imposed by the trial court be proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Id*. at 460. That is, a trial court "must take into account the nature of the offense and the background of the offender." *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990).

The challenged sentence arose because the trial court was sentencing defendant after his probation was revoked. In *People v Hendrick*, 472 Mich 555, 561-562; 697 NW2d 511 (2005), our Supreme Court explained that a revocation of probation is not a separate felony, but rather "clears the way for a resentencing on the original offense." *Id*. at 562 (quotation marks and citation omitted). Accordingly, defendant was being sentenced for his original offense of larceny in a building involving SS.

---

[8] We note for clarity that this was defendant's third larceny-in-a-building conviction mentioned in this opinion. The others were the one against SS and the one against JU.

The guidelines range for that offense was zero to 17 months. At defendant's sentencing, probation agent Brian Steed stated that defendant "has done atrociously since he's been placed on probation," noting that "[h]e's absconded twice and then ultimately committed another felony in Kent County," and concluded that prison would be appropriate if defendant "did not have 678 days of jail credit[.]" When sentencing defendant, the trial court stated:

> As I indicated, the Court reviewed the report and recommendation in this case. I will note that the defendant's guidelines, the underlying guidelines were zero to 17 months.
>
> The case that I have [defendant] on probation for was larceny in a building of which he was if I remember right was found guilty after a trial in this matter. Then commits and is sentenced to another larceny in a building.
>
> The defendant in this case has two prior felonies and 12 prior misdemeanors of which he has in 2012 had an attempted larceny in a building, 2012. There are some other—oh there was a retail fraud that was dismissed which is—and I'm looking for theft crimes. That charge was actually dismissed. In 2016 he had a larceny in a building. In 2017 has larceny in a building and then another larceny in a building.
>
> I don't—I respect your recommendation in this case, Mr. Steed, but it is clear that this Court will not tolerate this sort of behavior. He obviously has issues keeping his hands to himself or others people's property [sic].
>
> So, sir, the most that I can give you is 32 months based on the fact that your underlying felony is only a four year felony. So your sentence will be as follows, I am sentencing you to the Michigan Department of Corrections for a period of 32 months to four years. Credit for 678 days already served.

MCL 771.4 provides, "If a probation order is revoked, the court may sentence the probationer in the same manner and to the same penalty as the court might have done if the probation order had never been made." In *Hendrick*, 472 Mich at 561-562, our Supreme Court explained that, though the sentencing court *may* sentence the probationer in the same manner and to the same penalty under MCL 771.4, "nothing in the statute requires it to do so." The Court further noted that, when the court is fashioning a new sentence following a probation violation, "it is perfectly acceptable to consider postprobation factors in determining whether" to depart from the sentencing guidelines. *Id*. at 562-563.

We begin by acknowledging that, though the guidelines remain "highly relevant," they are now "fully advisory." *Steanhouse*, 500 Mich at 473-474. Trial courts *must* consult the guidelines and take them into account when sentencing, but the *key* test in reviewing a sentence "is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range[.]" *Id*. at 474-475 (quotation marks and citation omitted). Defendant does not dispute that the trial court consulted the guidelines and took them into account when sentencing him, and the record reflects the same. The dispute is

whether defendant's sentence, which departed from the guidelines by 15 months, was proportionate.

Defendant states that "the trial court appear[ed] to give great weight to [defendant's] Kent County conviction . . . ." We agree. The trial court began by acknowledging that, while defendant was on probation for his larceny-in-a-building conviction, he committed another larceny in a building. Again, "it is perfectly acceptable to consider postprobation factors in determining whether" to depart from the sentencing guidelines. *Hendrick*, 472 Mich at at 562-563. Defendant's guidelines' sentence did not take into account defendant's subsequent larceny in a building committed while he was on probation. Thus, defendant's actions while on probation provided an adequate basis for the trial court to depart from the guidelines. Compare *People v Dixon-Bey*, 321 Mich App 490, 526-529; 909 NW2d 458 (2017) (explaining that a departure was not warranted because all of the reasons given by the trial court for its departure sentence were already taken into account by the guidelines).

This conclusion is supported by this Court's reasoning in *People v Schaafsma*, 267 Mich App 184; 704 NW2d 115 (2005). There, this Court explained that "any probation violation represents an affront to the court and an indication of an offender's callous attitude toward correction and toward the trust the court has granted the probationer." *Id*. at 185-186. The *Schaafsma* Court ultimately held that a probation violation could be "a substantial and compelling reason to depart from the guidelines." *Id*. at 186. If a probation violation could constitute a substantial and compelling reason to depart from the guidelines, we see no reason why it could not justify a departure under a reasonableness standard of review.

Thus, the trial court articulated a proper reason for its departure: defendant violated his probation by committing the same crime that he was on probation for. The trial court then tied defendant's probation violation to a string of larcenies that defendant had committed.[9] That is, the trial court took into account the nature of the offender, as required by the principle of proportionality. It found that defendant's history evidenced a pattern of theft, and an apparent inability to "keep[] his hands" off others' property.[10] Proper reasons for a departure sentence include the defendant's potential for rehabilitation. *Dixon-Bey*, 321 Mich App at 525 n 9. While the trial court could have been more articulate, it is apparent to us that the trial court was concerned with defendant's recidivism; despite repeatedly being caught stealing, and despite

---

[9] Defendant states that the trial court "improperly considered previous charges that had been dismissed," referring to the trial court's mention of the retail fraud charge. But the record reflects that the trial court expressly acknowledged that the charge was dismissed, and the record does not suggest that the trial court in any way relied on that dismissed charge in sentencing defendant.

[10] Defendant somewhat strangely contends that "the trial court appears to have an unverbalized policy of intolerance when it comes to people having issues with keeping their hands to themselves or off other people's property." Clearly, the court *is* intolerant toward a person who repeatedly commits larceny or attempted larceny, and this intolerance is entirely proper.

repeated convictions, defendant continued to steal. Defendant's apparent lack of potential for rehabilitation was a proper reason to depart from the guidelines' recommended sentence.

We note, however, that trial courts are not only required to justify why a departure sentence is warranted, but are also required to justify the *extent* of the departure. *People v Smith*, 482 Mich 292, 305-306; 754 NW2d 284 (2008). Though the trial court did not specify why it was imposing a 15-month departure sentence, it *did* explain that it was imposing the maximum sentence allowable. Thus, the trial court was not imposing a higher sentence because it could not go above the allowable maximum, and it was not imposing a lower sentence because it apparently determined that such a sentence would not be proportionate. We conclude that, under the circumstances here, the trial court's stated reasons supported imposing the maximum allowable sentence, so the trial court's sentence did not violate the principle of proportionality.[11]

Affirmed.

/s/ Patrick M. Meter
/s/ Colleen A. O'Brien
/s/ Jonathan Tukel

---

[11] Defendant contends that the delay in the probation-violation case resulted in his having to serve consecutive sentences. This is inaccurate because defendant was given 678 days of jail credit, and these 678 days encompassed the 365 days served in the Kent County Jail.